## G. C. COOK v. THE STATE.

### No. 3790.    Decided November 17, 1915.

**1.—Murder—Manslaughter—Evidence—Acts and Declarations by Deceased.**

Where, upon trial of murder and a conviction of manslaughter, the evidence showed improper relations between the wife of the defendant and the deceased, the defendant should have been permitted to introduce in evidence the declarations of the deceased made some time before the homicide tending to show his relations with defendant's wife; however, the bill of exceptions was defective.

**2.—Same—Evidence—Bill of Exceptions.**

In the absence of any grounds of objection in the bill of exceptions in ruling out certain testimony offered by the defense with reference to a statement by the deceased, the same can not be reviewed on appeal.

**3.—Same—Evidence—Confession—Oral Testimony.**

Where, upon trial of murder and a conviction of manslaughter, defendant's confessions were introduced in evidence over his objections, and there was some controversy as to whether the same was voluntary, and whether it was properly obtained, testimony with reference thereto should have been admitted in evidence, and the issue submitted to the jury.

**4.—Same—Charge of Court—Limiting Testimony.**

Where, upon trial of murder, the defendant contended that he shot and killed his wife while intending to kill her paramour, and he was then on trial for the murder of his wife, the effect of the testimony of the witnesses as to the shooting of said paramour should have been properly limited by the court's charge.

**5.—Same—Charge—Murder—Manslaughter.**

Where, upon trial of murder, the defendant was convicted of manslaughter, an exception to the court's charge on murder need not be considered.

**6.—Same—Charge of Court—Justifiable Homicide—Adultery.**

Where, upon trial of murder and a conviction of manslaughter, there was defense testimony that the wife of the defendant and her paramour were in position that they were having carnal intercourse, or about to have the same, and that at the time the defendant shot and killed both, they were together, and had not broken apart, the defendant, who was on trial for the murder of his wife, was entitled to have the jury charged, that under such circumstances, he would not be guilty of an offense, and the charge of the court failing to present this issue was reversible error. Following Williams v. State, 73 Texas Crim. Rep., 480.

Appeal from the District Court of Tarrant. Tried below before the Hon. Marvin H. Brown.

Appeal from a conviction of manslaughter; penalty, five years confinement in the penitentiary.

The opinion states the case.

*Virgil R. Parker, Sam S. Beene,* and *Henry R. Bishop,* for appellant. —On question of declarations of deceased as to his relations to the wife of the defendant: Hill v. State, 52 Texas Crim. Rep., 241; McAnear v. State, 43 id., 518; McComas v. State, 75 S. W. Rep., 533.

*C. C. McDonald,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of manslaughter, his punishment being assessed at five years confinement in the penitentiary.

This case, as is usual, has two sides to it. The undisputed facts will show that appellant and his deceased wife had been married something like twelve years at the time of the tragedy, having three living children. It is also a fact that his wife had been going to dance halls and places at night over appellant's protest, coming home late at night. On this particular occasion the deceased, her two sisters, who were living or boarding at the house of the deceased and appellant, and a relative of the appellant went downtown to do a little shopping, and later to attend moving picture shows. After they finished their shopping, the question of choice of picture shows came up, the deceased said she was not going to a moving picture show, that she was going to a dance hall, perhaps designating the Moose dance hall. Her sisters, then, one or both of them, suggested that if she would designate the time of her return home when they left the picture shows they would call for her. She stated no, they would not be able to find her, and that she would get home probably before they did. They reached home about 11 o'clock, or later, accompanied by appellant's relative, Louis Cook. Appellant asked the young ladies about his wife. They repeated to him, in substance, what had occurred and was said between them and they supposed she was at home. Appellant became worried and anxious about it, got up, partially dressed himself and put on his overcoat, got his gun,—a single barrel shotgun,—and went in quest of his wife. He went a block or such matter. Not seeing or hearing anything, he sat down on the steps of a vacant house not far from the corner of a street. After he had been sitting there something like thirty minutes his wife, accompanied by Grimes, came in sight. Appellant approached and told them "to run" or "get away"—both expressions are used in the testimony. Not heeding his remark, appellant fired two shots. Grimes and his wife both were killed. Grimes lived a while and made some statements with reference to the transaction. Appellant's wife was killed instantly. Grimes was shot in the stomach, and the woman in the back of the head. The State's theory was that when appellant shot Grimes his wife ran and slipped or stumbled and fell on the edge of the sidewalk and appellant walked to and shot her in the back of the head. Appellant's theory was, sup-

ported by testimony, that when he saw them approaching Grimes had his arms around his wife and his wife had her arms around his shoulder or on his shoulder or around his neck, and when they got to a certain point they stopped and embraced each other closely, and as he saw it Grimes had his hand down about the private parts of his wife trying to pull up her dress, and when he reached them he told them to run or get away, and that it took them some time to get themselves apart. They did not obey him. He fired to kill Grimes, and his wife was in such position that the shot struck her; that he did not intend to kill her, but only intended to kill Grimes, and thus the first shot entered the back of her head, from which she died, and the second shot entered Grimes' stomach. There is quite a lot of testimony in regard to the conduct of the deceased wife with other men. There is also a statement of Grimes introduced called a dying declaration, and also a confession made to the county attorney by the defendant. The substance of the confession was as to the immediate facts when appellant shot Grimes, and that his wife in some way slipped and his gun went off. The dying declaration of Grimes was to the effect that he met deceased, appellant's wife, at the foot of the steps leading up in the Moose hall, and at her request he was accompanying her home. That she stated to him, substantially, that her relatives, two sisters, and Louis Cook had failed to come and as an accommodation to her he was escorting her home. There is quite a lot of testimony showing that these statements were untrue; that he had been with her a great deal that night and had danced with her. His relation to her for quite a while had been such as to indicate undue familiarity. One of appellant's daughters, who was something like eleven years of age, testified that she had gone with her mother at nights to different places, and that Grimes would come home with her mother, and that she, the child, would be ahead of them and they would get behind her and she would stop and hear and see them embracing each other, kissing and doing amorous performances of that nature and character. The conduct of the wife was such that appellant had become uneasy and nervous about it and expostulated about her going out so much at night and coming home so late; that on this particular occasion he became outraged and concluded he would investigate it, with the result of the tragedy.

Appellant offered to prove by Sargent, who was a letter carrier, that in a conversation with other carriers they were discussing matters, and, to use his expression, "joshing one another"; that the letter carriers were supposed to make eight hours a day and that a man could not make two full trips in eight hours; if he just has time to make one he will just make one and a piece of a trip; that they call it a trip and a piece; that the boys were joshing one another about making a trip and a piece or getting a trip and a piece, and that Grimes said, "I am going to get two trips today and a piece tonight"; that the witness Sargent had never had any trips at night because there was no letter carrying at night; that the trips and pieces of trip did not apply to anything at night. The object and purpose of this testimony is not

stated in the bill. It occurs to the writer that as the killing occurred that very night, that under the circumstances and facts of the case if this bill of exceptions had been properly reserved to show all these matters, the testimony ought to have gone to the jury for what it was worth as showing the relations, in view of the facts, existing between Grimes and the deceased woman.

Another bill recites that Melton was permitted to detail before the jury a statement made by deceased Grimes after the shooting upon Melton's arrival at the scene of the tragedy. There are no objections stated or reasons explained in the bill by the defendant why this testimony should not be admitted. It may have been admissible, but without some reason shown in the bill why it was not admissible, the bill does not show error. No grounds of objection are stated. The same will apply to the next bill with reference to the testimony of F. M. Patten. There are no grounds of objection stated, nor is it sufficiently connected to show why it was not admissible.

The statement, which is called a confession, was introduced over many objections. There was a controversy as to this confession as to how it was obtained, and the testimony in regard to the matter was narrowed down to that for the State by the county attorney, and for the defendant by the defendant. One shows proper warning; the other excludes it. The defendant says he was not warned, and that just after he had been placed in jail the county attorney sent after him and had him brought into his office and told him to make a statement. He says he was not warned, and that the county attorney had it written down, and that he signed it, and it was never read over to him, and he did not really know what he was signing. The court submitted this in the charge from the standpoint only from the want of warning as the only issue growing out of this controversy as to the real facts. We are of opinion upon another trial he not only should submit the issue of a warning, but as to the fact the defendant did not dictate the statement or make the statement or knew what the statement was. It was an issue and defendant was entitled to have his side of it presented to the jury. The confession as shown in the statement of facts was witnessed by several parties, and if the statement was as contended by the State, it would doubtless be admissible, but if as contended by the defendant, it was not admissible. Anything that impairs the voluntariness of the statement or shows the party confessing did not understand what it was or that he really did not make it, or that it was written down and he required to sign it under such circumstances, it would be a matter for the jury whether or not they should consider it. The issue was sharply made and sharply drawn. The charge should properly present this matter.

Another ground of exception to the charge was that the court failed to limit the effect of the testimony of the witnesses as to the shooting of Grimes by defendant, and nowhere charges them either in substance or in effect that the testimony could be considered only as a circumstance tending to show defendant's intent and the condition of his mind, etc.,

at the time he shot Carrie Cook, and for no other purpose. We are of opinion that as this matter was connected up so closely, and the shooting all occurred almost instantly, that the court should have instructed the jury that they could not convict appellant under this indictment for shooting Grimes, and the testimony would be limited to its proper sphere in considering the killing of his wife. This might not be fatal error, but it would be advisable upon another trial to limit the effect of this testimony so the jury would be confined exclusively in their consideration as to the finding of their verdict to the killing of the wife.

Another ground of exception will not be considered. It was as to the charge on murder. He was acquitted of murder and awarded manslaughter.

The next ground brings the serious question of the case. Appellant's theory was that the parties were in such position that they were having intercourse or about to do so, and that at the time he shot they were together and had not "broken apart," as he said. He was entitled to have the jury charged, under those circumstances, that he would not be guilty of violating the law in killing his wife. The court charged the jury, substantially, that even though they should find from the evidence that defendant found Grimes and his, defendant's, wife in each other's embrace, and although they should further find and believe that they were about to have carnal intercourse with each other, that defendant would be neither justified nor excused for killing his wife, if they should further find and believe from the evidence that the defendant shot at Carrie Cook and that the defendant did not accidentally kill the said Carrie Cook. Without going into a detailed statement of the matter further, the court's limitation on the testimony in this respect is not justified under our law. If appellant catching them in the act of embracing each other, and under the other circumstances unnecessary here to repeat, already detailed, believed they were then in the act of intercourse, or preparing to do so, he had a right to kill. This is statutory, and the court's limitation of the law, that under such circumstances appellant would not have a right to kill, is not correct. This court undertook to review that question in Williams v. State, 73 Texas Crim. Rep., at page 480. The writer of this opinion wrote at length in that case on several questions, the majority of the court filing a concurring opinion, not agreeing in full with the writer, but did agree and so held that where the defendant catches the deceased and his wife in such amorous relations, he would be entitled to kill the wife as well as the seducer of his wife. This law was ignored in the charge of the court. It should have been given, and the jury instructed if they believed such to be the fact at the time of the killing, as contended by appellant, they should acquit.

Because the court did not charge this aspect of the law, the judgment is reversed and the cause remanded.

*Reversed and remanded.*