## H. K. SWANN v. THE STATE.

No. 6740.  Decided April 5, 1922.

Rehearing Denied June 21, 1922.

### 1.—Murder—Manslaughter—Practice on Appeal.

Where, upon trial of murder and a conviction of manslaughter, complaints were made to matters which relate solely to rulings of the trial court, affecting the issue of manslaughter, the same need not be considered on appeal.

### 2.—Same—Insanity—Charge of Court—Uncontrollable Passion.

Where, upon trial of murder, the issue of insanity was not sufficiently raised by the evidence, there was no error in refusing to submit to the jury the issue of insanity. Uncontrollable passion or excitement rendereding the mind incapable of cool reflection may reduce a killing to manslaughter, but does not inject insanity into the case.

### 3.—Same—Insult to Female Relatives—Charge of Court.

The complaint that the charge of the court submitting insult to a female relative is to restrictive will not avail when the conviction is for manslaughter, as in the instant case; this also applies to the rejection of evidence, etc., upon this issue.

### 4.—Same—Self-Defense—Charge of Court—Pursuing Deceased.

Where, upon trial of murder and a conviction of manslaughter, an exception was taken to the charge of the court on self-defense, on the ground that it restricted appellant's right of self-defense to his belief that the deceased was about to draw a pistol or other weapon, and also as to the charge on the converse of the proposition, held: that under the facts of the instant case there was no reversible error in refusing to change the court's charge on this phase of the case, the facts showing that after the first shot was fired by the defendant deceased fled and ran and appellant pursuing him again shot him twice at close range. One acting in self-defense has the right to stand his ground, or even pursue his adversary, this, however, must not be carried beyond the point of self-defense.

### 5.—Same—Evidence—Opinion of Witness—Acts of Deceased.

An impression or opinion which is a mere guess is not admissible in evidence, and there was no error to refuse witness to state her impression as

to what the deceased was doing at the time of the shooting, following Richardson v. State, 49 Texas Crim. Rep., 395, and other cases.

### 6.—Same—Evidence—Question by State's Attorney.

While the question propounded by the State's attorney to the witness, as to what boy he meant, etc., was improper, yet it was not of such injury as to call for a reversal of the case, and there was no reversible error.

### 7.—Same—Sufficiency of the Evidence.

Where, upon trial of murder and a conviction of manslaughter, the same was sustained by the evidence, there was no reversible error.

### 8.—Same—Rehearing—Manslaughter—Charge of Court.

Appellant's motion for rehearing, insisting that error was committed in the charge on manslaughter, and that while the conviction was for manslaughter, only, the alleged error may have resulted in more than the minimum penalty being assessed, this court, after reviewing the record, must overrule the motion for rehearing.

Appeal from the District Court of Grayson. Tried below before the Honorable F. E. Willcox.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Woods, Jones & Wood,* for appellant.—Cited Washington v. State, 68 Texas Crim. Rep., 589; Pannell v. State, 54 id., 498; Drysdale v. State, 156 S. W. Rep., 685, and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, for the State.—Cited cases in opinion.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Grayson County of manslaughter, and his punishment fixed at three years in the penitentiary.

Appellant killed one Dewey Woodruff the husband of his daughter. From his story and the testimony of his witnesses there appeared to be adequate cause to reduce the homicide to manslaughter, and this was done by the jury in their verdict. Many of the complaints made on this appeal are of matters which relate solely to rulings of the trial court and other matters affecting the issue of manslaughter, and in view of the fact that the conviction was for this grade of homicide, all such complaints will pass out and not be discussed by us.

There was no error in refusing to submit to the jury the issue of insanity. In its strongest light as tending to raise this issue, the evidence was wholly insufficient. Appellant testified he was following deceased and his brother down a street of Denison, Texas, and that his purpose was to overtake them and have a talk with deceased. He

details the movements of himself and both the others up to a point where they set down suit cases which they were carrying and turned toward him. His testimony at this point is as follows:

"When I thought they were going after their guns I went after mine. I had a pistol in my right side, and pulled it out, and commenced to shoot as fast as I could shoot advancing that way. My pistol was a double-action 41-Colt's. After I commenced shooting I about lost control of myself; I did not know hardly what I was doing. I advanced but I don't know how long I advanced. I was excited is the reason I don't know."

This presents the matter in its best light as supporting appellant's contention. This is not enough in our opinion to call for the submission of the issue of insanity. Uncontrollable passion or excitement rendering the mind incapable of cool reflection, may reduce a killing to manslaughter but does not inject insanity into the case. Appellant did not even claim to have lost control of himself until after the first shot was fired.

Complaint that the charge submitting insults to a female relative, is too restrictive, will not avail when the conviction is for manslaughter. This is also true of the rejection of evidence as to the kind or character of people with or among whom appellant was informed or believed that deceased was taking appellant's daughter after their marriage and prior to the homicide; this is also true of any conduct reported to appellant reflecting the fact that deceased was trying to induct his said daughter into a life of shame, and that the mother and sisters of deceased were prostitutes and had been convicted of vagrancy, etc. These observations cover matters included in appellant's bills of exception Nos. 2, 4, 5, 8, 10 and others as well as the affidavit of one Craig appended to appellant's motion for new trial and set up as newly discovered evidence.

Among other things the court charged the jury as follows:

"Now, if you find and believe from the evidence that the defendant killed Dewey Woodruff on the occasion in question, but you further find that at the time of doing so, the deceased was making a demonstration with his hands towards his person, and it then and there reasonably appeared to the defendant, viewing the case from his standpoint at the time, that the deceased was about to or was preparing to draw a pistol, or other weapon, and that the deceased by his acts, or by his acts coupled with his words, if any, caused the defendant to have a reasonable expectation or fear of death or serious bodily injury, viewing the case from his standpoint at the time, and no other, and acting under such reasonable expectation or fear, the defendant shot and killed the deceased, then you are instructed that the defendant would be justified in his action, and you will find him not guilty; or, if you have a reasonable doubt thereof, you will acquit the defendant."

An exception was taken to this on the ground that it restricted ap-

pellant's right of self-defense to his belief that deceased was about to draw a pistol or other weapon. The charge is not open to the objection made. There was no claim that deceased or his brother did in fact draw or exhibit pistols or other weapons. At most the defense was based on a demonstration by deceased or his brother, which might have formed a basis for the belief on appellant's part, looked at from his standpoint, that he was in danger of bodily harm or loss of life. This was the theory of the court's charge quoted above. See Branch's Ann. P. C., Secs. 1923-1924 for authorities.

The trial court submitted appellant's right to advance upon the deceased and to continue to shoot as long as danger, real or apparent, existed, viewed from his standpoint. No complaint either of the substance or form of this part of the charge appears. Immediately following that paragraph the court below gave the converse in the following language:

"On the other hand, if you find and believe from the evidence that the defendant shot the deceased at the beginning of the difficulty as a means of self-defense, or as a means of defending himself against real or apparent danger, viewing the case from his standpoint at the time, but you further find and believe from the evidence beyond a reasonable doubt that after the deceased was so shot he fell to the ground, and that after he fell to the ground the defendant shot him one or more times, and that after the deceased fell to the ground he was incapable of doing the defendant any harm by reason of being shot, and that all danger to the defendant had ceased, and that this fact was known or apparent to the defendant at the time he shot the deceased, after the deceased fell to the ground, if he did, viewing the situation from the standpoint of the defendant at the time and no other, and you further believe from the evidence that said shot or shots, if any, so fired after the deceased was down, if he was, caused or contributed to cause, the death of the deceased, then you are instructed that such killing would be unlawful, and would not be justifiable; and if you so find and believe from the evidence, you should find the defendant guilty of murder, or guilty of manslaughter, as you may find and determine from all the facts and circumstances in evidence before you under the instructions hereinbefore given you."

This was objected to for various reasons. Its correctness depends to some extent on the facts. Without dispute it appeared that deceased and his brother left a house where the former and his wife had been staying, both carrying grips or suit cases in their hands, and that they walked at an angle southeast across a street. Appellant was upstairs in the same house when his attention was called to the departure of the Woodruffs. He at once went downstairs, out the door and walked east along the north side of Chestnut street which intersected Fannin street a short distance to the east. The Woodruffs

reached the corner of Fannin street and turned south. Before appellant got to Fannin street he started at an angle across Chestnut street toward the corner around which the Woodruffs had just gone. The testimony shows that about one hundred and twenty feet south of said corner there was an alley, paralleling Chestnut street. After the shooting the body of deceased lay at or near this alley. Appellant testified that when deceased and his brother reached a point about half way between Chestnut street and said alley, they set their grips down and turned toward him and advanced some distance in his direction, making movements as though to draw weapons, and that he drew his pistol and began firing. On direct examination he said that after he fired the first shot he lost control of himself and did not know what occurred. All the eyewitnesses said that deceased pursued by appellant ran south toward the alley and that about the time he reached same he fell, and that appellant ran up to him and fired two more shots. On cross-examination appellant admitted that he saw deceased lying on the ground when he left the spot, and that he had run down to a point near deceased when he saw him on the ground; that he was then as close to deceased as two or three steps; that deceased was lying on his side with his right arm under him and was looking up into appellant's face, but did not say anything. Appellant used this expression in his testimony: ''I turned around and went back toward town after I shot the last time, and he was then on his side looking up at me.'' Oliver Woodruff, brother of deceased, who was with him at the time, after testifying that both he and deceased were running south when appellant began firing, further stated: ''I kept running and looked back and defendant was standing over Dewey (deceased) shooting him in the back, and he was on his face. Another witness swore that he heard shooting and looked up and saw two men running; that he heard another shot and saw a man following the two who were running. After the second shot one of the fleeing men fell near the alley. After he fell the man who was pursuing him stepped up to him and shot him twice in the back. That defendant was standing right over the deceased when the last two shots were fired. Mrs. Winkler testified that she saw the Woodruffs going south on Fannin Avenue with their grips, and that appellant was following them; that she saw a gun in his hands and when she saw it she screamed; that when she screamed the Woodruffs looked back for a second or two and then dropped their suit cases and ran. Just after they ran appellant fired; that deceased ran a few steps further and fell; the point where he fell was hidden from her by a fence. She said appellant ran on down there and fired two or three more shots. ·

It thus appears practically without contradiction that after the first shot was fired by appellant, deceased fled and ran sixty or more feet, appellant pursuing him, and that after deceased had fallen appellant fired twice at close range. Three shots entered the body ap-

parently from the rear. The charge so objected to would seem applicable and apt. While one acting in self-defense has the right to stand his ground or even pursue his adversary, this must not be carried beyond the point of self-defense. There was no sort of controversy over the fact that deceased fled, nor that he fell while so fleeing. If after he fell any apparent or real danger was past, and this fact was known to appellant, and he thereafter fired a fatal shot, the homicide would beyond dispute have been unlawful. We do not think said charge argumentative or on the weight of the evidence. Bordeaux v. State, 58 Texas Crim. Rep., 61; Johnson v. State, 63 Texas Crim. Rep., 50; Mason v. State, 72 Texas Crim. Rep., 501, 163 S. W. Rep., 66; St. Clair v. State, 49 Texas Crim. Rep., 483.

A Mrs. Campbell was upstairs in the house from which the parties went shortly prior to the shooting, and said that she was looking out a window at deceased when the first shot was fired, and that he was advancing toward appellant and had his right arm "in an elevated and extended position" when said shot was fired. She said that she did not notice whether his hand was open or closed, and also stated that she saw no pistol in his hand. At another place in her testimony she said that the hand of deceased was "to the side of his body as far down as his pocket or near there." Appellant sought to have this witness answer the following question: "Looking at them as you were and seeing their movements, did you get an impression right at the time immediately when you saw him (deceased) make that movement as to what he was in the act of doing? It is stated that had she been permitted to answer, this witness would have said that the conduct of deceased at the time of and immediately preceding the firing formed the impression on her mind that he was reaching to draw a pistol. Not only is her testimony in direct contradiction to that of appellant, who said that at the time he fired the first shot deceased had his right hand behind him and his left hand hanging by his side, but the evidence of the witness seems self-contradictory as we understand the record. After stating that when the first shot was fired deceased had his right arm in an elevated and extended position, and that she did not look at him after the first shot was fired, she stated that the last time she saw him deceased was going north with his hand in the position she had stated. An impression or opinion which is a mere guess is not admissible. Taylor v. State, 41 Texas Crim. Rep., 149; Richardson v. State, 49 Texas Crim. Rep., 395; Moffat v. State, 35 Texas Crim. Rep., 262; Irvine v. State, 26 Texas Crim. App., 48; McClure v. State, 53 S. W. Rep., 111.

Complaint is made of the fact that on cross-examination of appellant he was asked by the State if he did not see the Johnson boy near the scene of the shooting at the time it occurred, and upon his reply that he did not the question was repeated, and that appellant asked State's counsel what Johnson boy he meant, and that State's counsel replied

that it was the boy who was killed at appellant's house after this homicide. Appellant seems to think this some insinuation or reflection from which an injurious inference might be drawn. We are unable to comprehend the evil effect of same. An oral instruction was given by the court to the jury not to consider the statement of the prosecuting attorney, but no written instruction was asked along this line. We do not think the statement of said attorney a proper one, but that it is not of such injurious effect as to call for a reversal of this case in the way same is here presented.

The jury accepted appellant's claim that he found out after a hasty marriage of his daughter to deceased that the latter was not of good character, and that his mother and sisters were also of the wrong sort, and that in their wrongful living and conduct deceased was implicated. Appellant claimed that he had good reason for believing that deceased was trying to lead his young wife, appellant's daughter, into a life similar to that led by the mother and sisters of deceased, and that this and other matters in the record aroused him to a pitch which rendered his mind beyond control at the time of the homicide. This conclusion of appellant was combatted by the testimony of his daughter, the wife of deceased, who had married another man prior to the instant trial. The jury gave to appellant the benefit of his view of the case in this regard and convicted him only of manslaughter. A further recital of the facts would be of no value. We have given careful consideration to each contention of appellant, and being unable to conclude that he had been denied a fair and impartial trial, the judgment of the trial court will be affirmed.

*Affirmed.*

ON REHEARING.

June 21, 1922.

HAWKINS, JUDGE.—Appellant has filed a motion for rehearing in which it is earnestly insisted that error was committed in the charge on manslaughter, and that while the conviction was for manslaughter only, the alleged error may have resulted in more than the minimum penalty being assessed. Because the jury accepted appellant's version of the transaction and gave him a manslaughter conviction, and for the further reason that the facts as detailed by him appeal very strongly to us, as they evidently did to the jury, we have carefully examined his motion for rehearing and the authorities cited therein. We have been unable to reach the conclusion that any such error was committed by the trial court as would justify a reversal of the case. It had our earnest and careful consideration upon the original submission and to write further would simply be largely a repetition of our views expressed in the original opinion.

The motion for rehearing will, therefore, be overruled.

*Overruled.*