**INDEMNITY INS. CO. OF NORTH AMERICA v. SCOTT et al. (No. 831—4533.)**

Commission of Appeals of Texas. Section A. Oct. 12, 1927.

**1. Master and servant** ⚖️373—**Proof that injury resulted through employee's unlawful attempt to injure another would prevent recovery of compensation (Rev. St. 1925, art. 8309, final subsec. 4).**

Under Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82, final subsec. 4 (Rev. St. 1925, art. 8309), in workman's compensation case, if defenses that injury from which employee died did not grow out of employment, and that it was not incidental to employment and was result of his unlawful attempt to injure third person, should be established, compensation could not be recovered.

**2. Master and servant** ⚖️371—**"Compensable injury" is one having to do with and originating in employer's business (Rev. St. 1925, art. 8309, final subsec. 4).**

Under Rev. St. 1925, art. 8309, final subsec. 4, "compensable injury" sustained in course of employment is one having to do with and originating in work, business, trade, or profession of employer, and which was received by employee while engaged in or about furtherance of affairs or business of employer.

**3. Master and servant** ⚖️373—**Death of employee, killed by another for motives entirely personal, is not compensable (Rev. St. 1925, art. 8309, final subsec. 4).**

Under Rev. St. 1925, art. 8309, final subsec. 4, death of employee at hands of another, slaying for motives entirely personal and wholly exclusive of employee status, is not ground for compensation.

On Hearing by Supreme Court.

**4. Master and servant** ⚖️373—**Injury received by employee seeking redress from insult by fellow employee held compensable as originating in work (Workmen's Compensation Law, Rev. St. 1925, art. 8309).**

Evidence that employee of slaughter house had refuse thrown in his face by another employee and was shot by the other employee, when evidently seeking redress for the insult, *held* to sustain trial court's finding that deceased met his death while in course of his employment, and that it originated in the work he was doing, within Workmen's Compensation Law (Rev. St. 1925, art. 8309), and that the injury was not caused by the passion or inflamed mind on the part of deceased.

Error to Court of Civil Appeals of Tenth Supreme Judicial District.

Suit by the Indemnity Insurance Company of North America against Pinkie Scott and others, to set aside an award in their favor by the Industrial Accident Board, wherein defendants filed a cross-action seeking recovery for compensation, under the Workmen's Compensation Law, for the death of Robert Scott. Judgment of Court of Civil Appeals (278 S. W. 347), affirming a judgment for defendants on their cross-action, and plaintiff brings error. Affirmed.

Bryan & Maxwell, of Waco, for plaintiff in error.

F. M. Fitzpatrick, of Waco, for defendants in error.

NICKELS, J. Robert Scott was killed by a fellow employee while in the service of Robinson Packing Company, a subscriber within the meaning of the Workmen's Compensation Law. Indemnity Insurance Company of North America was the insurer, and

Pinkie Scott is the widow, and the other defendants in error are the infant children of Robert Scott. The Industrial Accident Board awarded compensation. The insurer brought this suit against the beneficiaries to set aside the award, and they, by cross-action, sued for compensation. The case was tried without a jury. Judgment was rendered against the insurer, and, upon its appeal, the judgment was affirmed by the Court of Civil Appeals. 278 S. W. 347. Writ of error was allowed upon assignments presenting lack of evidence to warrant the judgment.

The opinion of the Court of Civil Appeals includes a summary of the pleading and evidence which, with exceptions to be noted, appears to be accurate and complete, and, in avoidance of repetition, we refer to and adopt that statement of the case with modifications indicated.

[1] The general contention, as presented, has two aspects: (a) The injury from which Scott died did not grow out of his employment, nor was it incidental thereto. (b) The injury was the result of his unlawful attempt to injure a third person, to wit, Fowler. If, by evidence of conclusive effect, either of those alleged facts is proved, the injury is noncompensable. Final subsection 4, art. 5246—82, Vernon's Tex. Civ. and Crim. Stat. 1918 Supp. (article 8309, R. S. 1925).

[2] A compensable "injury sustained in the course of employment" is one which "had to do with and originated in the work, business, trade, or profession of the employer and which was received by the employee while engaged in or about the furtherance of the affairs or business of his employer." Article 8309, R. S. 1925; Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402.

[3] Since Scott died immediately at the hands of Fowler, and since Fowler's act was purposed, compensability must rest upon narrow ground, for there can be no presumption that Fowler's employment included homicide, or that the master's business required Scott to provoke his own demise. As a matter of course, death of an employee at the hands of another, slaying for motives entirely personal and wholly exclusive of the employee status, is not a lawful basis for an award or judgment under this statute. Harris v. Texas Employers' Ins. Ass'n (Tex. Civ. App.) 257 S. W. 998; Stillwagon v. Callan, 183 App. Div. 141, 170 N. Y. S. 677; Id., 224 N. Y. 714, 121 N. E. 893; and various cases cited in Pekin Cooperage Co. v. Industrial Comm., 285 Ill. 31, 120 N. E. 530. And compensability for an injury caused by the employee's "willful intention and attempt to * * * unlawfully injure" another is expressly precluded in the words of the statute. Article 8309.

In pondering the immediate antecedents of Scott's death all reasonable minds, it is said, will conceive it as the result of some- thing wholly disassociated from his employment. But that view, it seems to us, ignores the hypothesis of involuntary conduct resultant of forces set in movement by the course of business in respect to Scott and sequent peril, real or apparent, confronting Fowler. That hypothesis, we think has support in the evidence.

In favor of the judgment, and on the record, these things must be assumed: (a) The drain and its screened mouth made up a plant facility with, and in respect to, which all four of the employees (Scott, Fowler, Green, and Garrett) had to work. It became clogged so as to require immediate attention, and the liability of its becoming clogged and requiring attention inhered in the premises and operation thereof, as did the instruments of peril considered in Lumberman's Reciprocal Ass'n v. Behnken, supra, and in Kirby Lbr. Co. v. Scurlock, 112 Tex. 115, 246 S. W. 76. (b) Cleaning of the drain mouth was a part of Scott's task, and performance of that work required the posture of body assumed by him at the moment. (c) Throwing entrails and excreta to the floor at or near the drain mouth was the task whereunto Green and Garrett had been set. (d) Immediately contemporaneous performance of the work thus by the conditions respectively assigned to Green and Garrett and Scott would likely, if not inevitably, result in injury to Scott, to the extent, at least, that splashing excreta in his face would be injurious. (e) Garrett and Green knew or should have known of Scott's position; they ought to have foreseen that filth would be his portion unless they paused; and their conduct (which by relation was the master's conduct) was negligent. (f) Emotion and potentiality of its stirring into uncontrollable passion inhered in Scott and Fowler as in other men.

To the matter, thus generally circumstanced, must be added the advance of Scott toward Fowler, accompanied with dire threats and the apparent ability of execution, immediately subsequent to the contact of the excreta with Scott's face, as testified to by Green and Garrett who were the only witnesses used on the subject. Each of them said that Scott did so advance and that when within 6 or 8 feet of Fowler the shot was fired which resulted in Scott's death. The testimony may be summarized thus with the idiom used by Green:

"Scott got angry and commenced cursing and said he was going to clean up that there packing house, and so Fowler, he was washing down the floor at the time and never paid no attention to him, and when he discovered anything and looked around, why Scott was making it to him with his knife, and of course then Fowler shot him. * * * I said that when Lew looked up and discovered Scott, he told him there was no use of that, but Scott he just kept right on coming to him, and so Lew shot him. * * * It was when [Scott] was coming towards him with that knife [i. e., a butcher knife about 10 inches

long] that Fowler told him there wasn't no use in that, but Scott didn't make no response at all to that; he just kept on going to him with that knife."

There is some discrepancy apparent when the testimony of Green and Garrett, to the effect noted, is compared with the circumstantial fact (otherwise disclosed) that the wounds indicate the bullet entered Scott's body on the right-hand side and emerged at a point slightly lower (maybe 2 inches lower) on the left side. But unless Green and Garrett testified truthfully in respect to a threatening advance by Scott, Fowler's conduct is left wholly unexplained. That is to say, any purpose in firing at Scott because of anything truly associated with the employment of either of them or with the master's business is undisclosed unless a threatening advance (i. e., attempt to injure) be taken as established. In such event, we would have but an unexplained homicide which, presumptively, is no part of any lawful employment or business. We must assume, then, that the trial judge took the fact of threatening advance as established—the testimony of Green and Garrett was sufficient to support such a finding, and the evidence touching location of the wound is not conclusive the other way even when considered alone. A face to face advance and a sudden turning of the body at the very instant of firing is not definitely negatived, and in that possibility may lie explanation of the apparent conflict.

We come, then, to view the transaction upon the hypothesis described, and as touching the conduct of Scott and Fowler, respectively.

Crime is voluntary, and an intellect functioning wth sufficient normality to form the design is a prerequisite of guilt. Article 39, Penal Code. Stated in more relevant form, there must be capacity to distinguish between right and wrong as to the particular act (Carter v. State, 12 Tex. 500, 62 Am. Dec. 539; Leache's Case, 22 Tex. App. 311, 3 S. W. 539, 58 Am. Rep. 638; Hurst v. State, 40 Tex. Cr. R. 378, 46 S. W. 635, 50 S. W. 719; Giebel's Case, 28 Tex. App. 151, 12 S. W. 591, 594; Kelley v. State, 31 Tex. Cr. R. 216, 20 S. W. 357) as contrasted with ability of merely "cool reflection" (Swann v. State, 92 Tex. Cr. R. 153, 242 S. W. 735). And whether or not the "attempt" proscribed in article 8309 must be "unlawful" in the sense of the criminal law, it must, under the terms of that statute, be intentional. If, therefore, Scott's movements and mutterings were in response only to an overweening passion, aroused by a cause for which he was not responsible, and which completely overturned reason for the moment, his conduct must be regarded as involuntary and 'as free of that criminal or intentional element whose presence is indispensable to preclusion of rights in his beneficial survivors.

It is plain that an injury which might have occurred to Scott by reason of direct contact between the filthy substance and his face would have been compensable; e. g., loss of eyesight from poisonous elements in the substance, or a neuresthenic traumatism which grew into decay of brain tissue and concomitant loss of mind. That proposition, we take it, is not debatable, for the injury, be it physical or mental, or both, would relate in unbroken sequence as is manifest, to danger which was ever latent in the premises and business, and which became active through negligent operation thereof.

We do not perceive just ground upon which to rest a distinction in the fact that immediate physical injury reacts directly through the passions, instead of bodily through nerve tissue, to dethrone reason and metamorphize physique to a dangerous instrument breathing peril for all in its range. That physical injury, occurred to Scott through contact of the filth and his face is patent. The injury, in its bodily aspects, may have been nominal only. But in the broader sense, the injury included immediate reaction upon mind and emotion. If thereby Scott became a man without reason, his involuntary and apparently menacing advance toward Fowler was not his act, within the meaning of this law, for his body was propelled by the force aroused in the contact. That force, as shown, lurked in the premises as operated in the business—its arousal being an incidental risk.

The force thus set in motion imminently portended evil to Fowler. Primal instincts of self-defense were his. It was his right to repel a menacing force evidenced to him by an approaching man to the same extent that it would have been his right to halt a machine loosened from its moorings and driven toward him by a power made active by explosion of a boiler. His right, if not his duty, in either event, included destruction, if the situation, viewed from his angle, reasonably appeared to require that extreme. Fowler was upon the premises engaged in performing his duties when he suddenly became thus circumstanced through negligent operation of the business. For aught that is shown, he was within his rights and acted merely as any man similarly conditioned would have acted in response to nature. He conducted himself as did each of the men intervening him who first threw the lighted squib and him who finally received it to his injury in the circumstances detailed in Scott v. Shepherd, 2 Wm. Blackstone (see Seale v. G. C. & S. F. Ry. Co., 65 Tex. 274, 57 Am. Rep. 602); each acted in proper self-defense, and, whether or not the essential proximity of causation would exist here if the case were governable by those rules controlling negligence cases, it cannot rightly be said that Fowler's conduct was such an independent agency as to prevent Scott's injury from hav-

ing arisen in the "course of employment" as the term is defined in the compensation law.

Accordingly, it becomes our duty to recommend affirmance of the judgment of the Court of Civil Appeals.

PER CURIAM. We are of opinion that the judgment should be sustained on the facts delineated in the opinion of the Court of Civil Appeals.

[4] Upon a careful review of those facts, we are able to say that there was an issue of fact as to whether or not the deceased, Robert Scott, at the time and just before he was shot, was making an attempt, whether willful or unlawful, to injure another, to wit, Lon Fowler. That fact, since there was evidence upon which to base the court's finding that the deceased, Scott, was not attempting to injure another, brings the case within the rule laid down by the decisions. Therefore the trial court's judgment that deceased met his death while in the course of his employment, and that it originated in the work he was doing, should be affirmed.

We think the judgment cannot be sustained upon the theory of passion or an inflamed mind on the part of Scott. Adequate cause does not make an assault lawful, but, at most, is only a mitigation.

The judgment of the Court of Civil Appeals is affirmed for the reasons set forth in the preceding opinion.

C. M. CURETON, Chief Justice.