H. D. Thompson v. The State.

No. 12628.   Delivered June 5, 1929.
Rehearing denied June 26, 1930.
Reported in 29 S. W. (2d) 343.

The opinion states the case.

*A. L. Curtis,* of Belton, and *L. H. Jones,* of Corpus Christi, for appellant.

*A. A. Dawson,* State's Attorney, of Austin, for the State.

MARTIN, JUDGE.—Offense, murder; penalty, thirty years in the penitentiary.

The State's testimony shows that deceased was shot by appellant in the back while sitting at a skating rink between his sister and the daughter of appellant. Testimony for appellant tended to show that the deceased had been paying attention to his married daughter, Mrs. Dolly Skinner, by whom he was seated at the time he was shot. Letters were found in the trunk of Mrs. Skinner by appellant's wife a short time before the killing and shown to appellant. These were identified as being in the handwriting of deceased and were shown to have been received by appellant's daughter. We quote briefly from one of these:

"Sweet Heart why can't I share my happiness with you, it would be so nice to fold you in my arms kiss your sweet lips and tell you that I love you every day, not only once a day would I do this but many. Do you think enough of me to quit the one that you now live with, and marry the one that loves you best of all?"

It is further shown that prior to the homicide one W. H. Hemphill, whose daughter had married the stepson of appellant, communicated to appellant, prior to the homicide, a conversation that he had had with deceased. This was to the effect that deceased told Hemphill that he had ruined the daughter of Grady Buckley; that he was not going to marry her but was going with another girl, Dolly Skinner, and that he was going to separate her and her husband. This witness was vigorously cross-examined in an effort to shake his testimony and the state proved that he had theretofore been indicted for a felony. The record sufficiently shows that the State was contending that Hemphill's testimony was a fabrication. Under these circumstances appellant offered to prove by Miss Buckley, daughter of Grady Buckley, that at the time of the homicide she was unmarried and was in a pregnant condition, and that the deceased was the father of her child. The Court refused to permit her to so testify and the admissibility of this testimony presents the only question which we think necessary to discuss.

The only defense raised by the testimony and relied on by appellant were the mitigating circumstances arising out of the conduct of deceased toward his daughter, Dolly Skinner. An article of the recently enacted murder statute reads in part as follows:

"In all prosecutions for felonious homicide the State or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous rela-

tionship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide, which may be considered by the jury in determining the punishment to be assessed." (Acts 1927, Fortieth Legislature, p. 412.)

It is apparently conceded that the testimony was admissible which shows that appellant prior to the homicide had received information that the deceased had ruined the Buckley girl. This the trial court admitted apparently without objection upon the theory, no doubt, that it would tend to show the state of mind of appellant upon being apprised of the fact that his married daughter was keeping company with a man whose moral tendencies were of the character noted above. Such testimony would seem to throw light upon and illustrate his condition of mind and his subsequent conduct. The State's contention seems to be that the killing did not happen because of deceased's connection with Miss Buckley, but same is an ancillary and collateral matter and proof of the authorship of her ruin sheds no light upon the issues involved in this case. We are not called upon in the state of this record to pass on whether or not such testimony was admissible as original evidence. The question presented by the bill is whether or not it was admissible as corroborative of Hemphill and as tending to prove that he in fact communicated the same to appellant, as testified to by him.

We find no case in point whose facts are identical with this. A general rule has been laid down by Mr. Bishop, as follows:

"Thus where the defendant, to excuse or *mitigate* his acts, claims that they were in self-defense or *passion,* the particulars of the transaction being thus material, and the law judging him by the facts and necessities as they appeared to him, whatever they truly were, he may give in evidence anything known to him of the character, prior conduct, threats, or other utterances of the person with whom he was contending * * * which might reasonably have place among the considerations guiding his actions. 2 Bishop Crim. Proc., Secs. 609, 610." Childress v. State, 16 S. W. 904.

If the communication to appellant of the fact of Miss Buckley's pregnancy by deceased was admissible, as seems to be conceded, and we think correctly so, then it would logically follow that corroborative evidence tending to prove its truth was likewise admissible if and when an issue arose as to its truth or as to the fact of such communication being made. To illustrate: Suppose the State in rebuttal of Hemphill's testimony offered to prove that no

·such person as Miss Buckley was ever in existence, or that deceased had been continuously out of the country·until the day of the killing. Under these circumstances there would seem to be no doubt of the State's right to make such proof. The rule ought to be permitted to work both ways. It was held in Cameron v. State, 153 S. W. 867, that the State might prove an alibi for deceased in rebuttal of the defendant's claim that deceased at a certain time had raped his wife. See also Barrett v. State, 98 Tex. Crim. Rep. 627. Proof of uncommunicated remarks of a similar nature made by deceased about the female relative of defendant is admissible as tending to show the probable truth of the testimony as to the insult that had been communicated. Branch's P. C., Sec. 2035; Fossett v. State, 41 Tex. Crim. Rep. 400; Walker v. State, 156 S.·W. 208. So also are letters passing between deceased and the female relative, though unknown to appellant, if they support defendant's claim that the killing was because of improper relations between deceased and the female relative. McAnear v. State, 43 Tex. Crim. Rep. 522. See also Jones v. State, 40 S. W. 811; Akin v. State, 56 Tex. Crim. Rep. 324.

Bearing some analogy to the question under discussion is the rule permitting proof under certain conditions of uncommunicated threats "to corroborate those communicated, and to show the mental condition of the deceased toward the accused where there is doubt as to who was the aggressor." Underhill's Crim. Evd. (3rd Ed.), Sec. 506; Menefee v. State, 50 Tex. Crim. Rep. 249.

Likewise the long established rule that the State may prove that deceased was unarmed or owned no pistol as disproving the claim of the accused that he made a demonstration as if to draw a gun. Branch's P. C., Sec. 1931; Seeley v. State, 43 Tex. Crim. Rep. 69; Pettis v. State, 47 Tex. Crim. Rep. 75.

These sufficiently illustrate the rule of evidence which under particular conditions makes admissible an apparently collateral matter, though unknown to the accused.

It seems unnecessary to further analyze the contents of the communication from Hemphill to appellant to demonstrate its probable effect upon the mind and future conduct of appellant. That it was calculated to stir the passions of a father under the facts shown in this record is hardly open to controversy. If so, he had the right to prove in every legitimate way the truth of the matters relied on by him in mitigation of the punishment, and we think under the issues

present in this record, he was entitled to corroborate Hemphill by the testimony of Miss Buckley and that its exclusion was error.

Judgment reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We have been much disturbed in arriving at a correct solution of the question raised in the motion for rehearing. If it be conceded that the testimony of the witness Hemphill to the effect that deceased had told him he had debauched Nettie Buckley and that witness had communicated this to appellant prior to the homicide,—was material, then in view of the attack upon the credibility of said witness both by the vigorous cross-examination of the State as to the fact of such conversation and its communication, also in having him admit that he had been indicted for a felony,—it would seem only fair to allow the defense to sustain such witness by proof that what he said had been told him by deceased, was true in fact. There was no objection apparently made by the State to any part of the testimony of Hemphill.

To our minds,—in view of the fact that Nettie Buckley was a stranger to appellant, and in nowise related to him, information of an affair between her and deceased prior to this homicide could have no sort of legitimate effect upon appellant's mind, and in view of the further fact that appellant admitted undisputed knowledge of misconduct of deceased toward the daughter of appellant wholly incompatible with any other than an evil purpose, both from what he had seen himself, from what his son had told him, and from what was contained in letters written by deceased to said daughter, found and read by appellant shortly before the killing,—that part of Hemphill's testimony relating to the statement of deceased claimed by Hemphill to have been made by deceased to witness and by witness communicated to appellant, which related to Nettie Buckley,—was of no materiality as affecting the mental status of appellant at the time of the homicide.

We are not so sure, however, in the present state of the record but that the rejected testimony was permissible to bolster up the credibility of Hemphill who was attacked as above stated, and who

thus stood before the jury in the attitude of a discredited witness. Appellant received a sentence which, for a man of his age, amounted to a life term. He may have deserved it, but when a defense witness gives testimony without objection, as in this case, and is then attacked as this witness was, and the defense be denied the right to support him by proof that what he claimed as having been told him and by him communicated to appellant, was in fact true,—we are in such grave doubt, to say the least, as to be unwilling to let the verdict stand.

The State's motion for rehearing will be overruled.

*Overruled.*