## H. D. THOMPSON v. THE STATE.

No. 14539.   Delivered November 25, 1931.
Rehearing Denied January 6, 1932.

The opinion states the case.

*A. L. Curtis,* of Belton, *Chambers & Gillis,* of Cameron, and *Walker Saulsbury,* of Temple, for appellant.

*Henry Taylor,* District Attorney, of Belton, *DeWitt Bowmer,* of Temple, *A. J. Lewis,* Criminal District Attorney, of Cameron, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for twenty years.

This is the second appeal, the opinion on the former appeal being reported in 115 Texas Crim. Rep., 337, 29 S. W. (2d) 343. The present trial was had in Milam county on a change of venue from Bell county.

Appellant shot and killed deceased, Carlton Fewell. The homicide occurred at night at a skating rink. At the time deceased was shot he was sitting between his sister and the daughter of appellant, Mrs. Dolly Skinner. Deceased was shot in the back. According to the state's testimony, appellant came up behind deceased and shot him with a pistol. There were powder burns on the back of deceased's shirt and around the wound. State's witnesses testified that deceased was doing nothing at the time, and that his hands were in front of him in his lap. Appellant and his witnesses testified that deceased had his arm around appellant's daughter, Mrs. Skinner. Deceased was unarmed. Appellant offered testimony to the effect that deceased had been paying attention to his daughter, Mrs. Skinner, she being a married woman and having a small son; that appellant had told deceased to keep away from Mrs. Skinner's home; that appellant's wife had found some letters from deceased to Mrs. Skinner in which deceased used terms of endearment, and, in effect, requested Mrs. Skinner to leave her husband and marry him; that appelalnt's wife had showed appellant these letters, and picture of Mrs. Skinner and deceased taken together; that appellant's son had seen deceased sitting in a park with Mrs. Skinner, with his arm around her; that he had advised his father of such fact. It was also in evidence from a witness for appel-

lant that he had advised appellant that deceased had stated to him that he had seduced one girl, and that he intended to take Dolly Skinner away from her home and family. Appellant testified to having been advised of these matters. He further testified that on the night of the homicide he had found that Mrs. Skinner had left home, and thought that she and deceased had eloped. He admitted that he went to the skating rink and killed deceased, and described his movements before and after the homicide. It appears that appellant relied upon the alleged conduct of deceased toward his daughter as a mitigating circumstance.

Appellant objected to the charge of the court on the ground that it failed to submit the law of temporary insanity. The testimony upon which the request was predicated was, in substance, as follows: A witness for the state testified that she noticed the expression on appellant's face when he shot deceased. She said that she had never seen appellant look like that before. She said that she noticed something strange about his appearance and expression. She said further that she guessed in one way that you would call appellant agitated. Another state's witness testified that appellant had a strange ashy expression on his face. Appellant testified that when he saw his daughter sitting by the side of deceased at the skating rink, with his arm around her, that he "was crazed". He said that he was not cool and calm and deliberate. He said further: "I saw this man there who was attempting to get my daughter to run away with him, and who had been going with her. I shot him." He stated further, in answer to the question as to whether he intended to kill deceased, that he "had no intentions." On cross-examination he said: "I don't know what I was doing. My mind was in condition until I don't know what I was doing."

The opinion is expressed that the testimony mentioned fails to raise the issue of temporary insanity. Prior to and subsequent to the time of killing, appellant showed no symptoms of insanity or weakened intellect. He testified fully to his movements up until the time he fired the fatal shot. After killing deceased he went from the scene of the homicide to his son's home. He described his trip from the scene of the killing to the home of his son. He testified that he took a drink of whisky after he reached his son's home. He said that when the officer came out to arrest him he told the officer he had killed deceased. Touching the movements of appellant on the occasion of the homicide, we quote part of his testimony as follows: "When I saw what was going on I pulled my pistol. I didn't take any particular aim. * * * I did not watch to see him fall and gasp for breath. I just walked back on out to my car and got in. I put my pistol in my car. I do not remember whether I carried it in my hand to the car or not. I did not load it all round again. I did not have any extra rounds with me. I did not groove that bullet before I shot that boy. I saw the bullet at the other trial over at Belton.

There was no one around my car when I got in. I did not leave my motor running when I went over to the rink. I went out to the farm to tell the boys to go to their mother. * * * I did not go out there in an unusual hurry. I was not looking back all the time. The reason I run into the sidewalk was because I thought I heard someone holler at me. * * * My lights were on. I hit the curb and damaged the right front wheel of my car."

We quote from Anderson v. State, 67 Texas Crim. Rep., 320, 148 S. W., 802, as follows: "We cannot sanction the doctrine that one who, prior to the time and subsequent to the time of committing an act, shows no symptoms of insanity or weakened intellect, can raise the question of insanity as a justification of crime by showing that he was not in a normal state of mind, was angry, looked wild, and acted different than he did ordinarily for the brief period of time necessary to the consummation of the act. Such doctrine would render virtually all homicides justifiable, for there are but few instances where one slays another while his mind is in normal condition." See also Lyles v. State, 91 Texas Crim. Rep., 400, 239 S. W., 616; Dover v. State, 102 Texas Crim. Rep., 113, 277 S. W., 675; Swann v. State, 92 Texas Crim. Rep., 153, 242 S. W., 735; McConnell v. State, 22 Texas App., 354, 3 S. W., 699.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Before the refusal to submit to the jury, in the charge of the trial court, an alleged defensive theory would be deemed an error for which a reversal should be ordered, it must not only appear that there were facts before the trial court tending to raise or to support such theory, but also that from such facts it reasonably appeared that the refusal might have resulted in injury to the rights of the accused. Davis v. State, 107 Texas Crim. Rep., 389; Knight v. State, 64 Texas Crim. Rep., 541; Carlisle v. State, 112 Texas Crim. Rep., 554; Lopez v. State, 112 Texas Crim. Rep., 517.

Evidently the trial court was of opinion that there was not before him evidence sufficient to justify the submission to the jury of the law applicable to a case of insanity. No witness testified in terms or effect that appellant did not know at the time he shot deceased, that it was wrong to kill him. Appellant did say while a witness, and when asked by his counsel what was the condition of his mind when he shot, that he was crazed. However, the record reveals that he detailed minutely his acts and conduct up to, during and after the shooting. No other witness

490

testified to any fact substantiating any theory or claim of insanity, other than one witness said appellant had a strange expression on his face. No expert gave testimony based on any hypothetical state of facts. In our opinion it was not error for the trial court to decline to submit the issue of insanity under these facts. We have given careful consideration to the able motion filed by appellant, and find ourselves unable to agree with his contentions.

The motion for rehearing will be overruled.

*Overruled.*