PEARL REED V. THE STATE.

No. 15788.   Delivered April 5, 1933.
Reported in 59 S. W. (2d) 122.

The opinion states the case.

*J. M. Ralston,* of Cameron, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Murder is the offense; punishment, 2 years in the penitentiary.

The evidence shows that on or about the 29th day of May, 1932, the appellant shot the deceased.   Some time previous to the killing the appellant was suspicious of the conduct of her husband and the deceased.   The appellant left her husband and went to live with her father.   Afterwards there was a reconciliation between them and she went back to live with her husband.   It seems that on the night of the homicide some women belonging to the church in the neighborhood, including the appellant, were giving a supper for the benefit of the church and the appellant and her husband went to the place where the supper was being given and assisted in the supper affair.   It further appears from the testimony that the deceased and another negro woman started to the place where the supper was being given, but before getting there they stopped and the two men with them went on, and the deceased sent word by

one of the men to tell appellant's husband where she was and for him to come down there. It seems that the husband of the appellant went to where the deceased was and they started going in the direction of the deceased's home. The other woman walked ahead of the deceased and the appellant's husband. When they had reached a point about three hundred yards from the deceased's house, she was shot and killed by the appellant as she was running away.

The appellant testified that she had missed her husband from the supper and had become suspicious of where he had gone and taking a pistol out of a drawer of the house she departed in search of her husband. She started for the home of the deceased thinking that she would find him there and when she reached a point on the road about three hundred yards from deceased's home she saw the deceased and her husband by the side of the road in a compromising position, he bending over as she thought in the act of committing adultery. She became excited by this sudden surprise and hollered to her husband, "Oh, Bubba" (meaning her husband), and the deceased and her husband jumped up and started running; that she fired at the deceased as she started to run and when she fired the deceased fell, and she then fired one shot at her husband as he ran off; afterwards she went to a telephone and told the telephone operator what she had done and asked her to telephone for the sheriff.

Appellant objected to the charge of the court on the ground that it fails to submit the law of temporary insanity. The testimony upon which the request was predicated was in substance as follows: The appellant testified that the condition of her mind at the time she fired was very uncertain and she didn't have any thought when she saw them in the road and she fired at once; she hardly knew what she was doing; she was startled at the scene before her eyes. A doctor testified in behalf of the appellant as follows: "The term 'temporary insanity' means for the time being; it means just a short time; a person going along and seeing something that would shock them might cry out or make some movement that would be an involuntary movement or shock; of course you couldn't tell what they might do under the circumstances you have related, coming upon something suddenly which might produce some exclamation or something of that kind; no physician or no person could tell with absolute certainty what a shock of that kind would cause a person to do; it would be just a mere opinion of any-

body of what the effect on a person would be of a shock of any kind."

We are of the opinion that the testimony mentioned fails to raise the issue of temporary insanity. According to the record before us, prior to and subsequent to the time of the killing, appellant showed no symptoms of insanity or weakened intellect. She testified fully to her movements up until the time she fired the fatal shot. After killing the deceased, she went from the scene of the homicide and had them telephone for the officers. Before the refusal to submit an alleged defense theory to the jury in the charge of the trial court would be deemed an error for which a reversal would be ordered, it must not only appear that there were facts before the trial court tending to raise or support such theory but also from such facts it reasonably appeared that the refusal might have resulted in injury to the rights of the accused. Davis v. State, 107 Texas Crim. Rep., 389, 296 S. W., 605; Knight v. State, 64 Texas Crim. Rep., 541, 144 S. W., 967. Evidently the trial court was of the opinion that there was not sufficient evidence before him to justify the submission to the jury of the law applicable to the case of insanity. No witness testified that appellant did not know at the time she shot the deceased that it was wrong to kill her. We quote from Anderson v. State, 67 Texas Crim. Rep., 320, 148 S. W., 802, as follows:

"We can not sanction the doctrine that one who, prior to the time and subsequent to the time of committing an act, shows no symptoms of insanity or weakened intellect, can raise the question of insanity as a justification of crime by showing that he was not in a normal state of mind, was angry, looked wild, and acted different than he did ordinarily for the brief period of time necessary to the consummation of the act. Such doctrine would render virtually all homicides justifiable, for there are but few instances where one slays another while his mind is in normal condition."

See, also, Lyles v. State, 91 Texas Crim. Rep., 400, 239 S. W., 616; Dover v. State, 102 Texas Crim. Rep., 113, 277 S. W., 675; Swann vs. State, 92 Texas Crim. Rep., 153, 242 S. W., 735.

Appellant also objected to the charge of the court on the ground that said charge did not charge that homicide is justifiable when committed by the wife upon one taken in the act of adultery with the husband, provided the killing takes place before the parties to the act have separated. In support of said contention the appellant cites article 1220 of the Penal

Code, which is as follows: "Homicide is justifiable when committed by the husband upon one taken in the act of adultery with the wife, provided the killing takes place before the parties to the act have separated. Such circumstances cannot justify a homicide where it appears that there has been, on the part of the husband, any connivance in or assent to the adulterous connection." The contention of the appellant, as we understand it, is that while said article specifies that where the homicide is committed by the husband upon one taken in the act of adultery, that it was also the intention of the Legislature to provide that the wife would be justified in killing the person taken in the act of adultery with the wife's husband. No authority wherein this exact point was raised has been cited by the appellant, but he cites the case of Williams v. State, 73 Texas Crim. Rep., 480, 165 S. W., 583, and also the case of Cook v. State, 78 Texas Crim. Rep., 116, 180 S. W., 254. In both of said cases it is held that under article 1220, P. C., above quoted, if the husband intentionally shot his wife while she was in the act of copulation with a man, it would be justifiable homicide. In the case of Billings v. State, 102 Texas Crim. Rep., 338, 277 S. W., 687, the holding in said cases above quoted was overruled and it was held that in a prosecution for murder of a wife killed with an alleged paramour after finding them in a compromising position, a charge on justifiable homicide was not authorized under article 1220, P. C. We quote from the opinion of Billings v. State, supra:

"We are aware of the fact that the case of Williams v. State, 73 Texas Crim. Rep., 480, 165 S. W., 583, and the case of Cook v. State, 78 Texas Crim. Rep., 120, 180 S. W., 254, are authority for the court's action in giving this charge in this case. After a very careful consideration of those cases and certain expressions in other cases which seem to support them, we have reached the conclusion that they are clearly wrong. Those cases are an extension of the statute which we are unable to justify or indorse. The right to kill is a matter with which the legislative branch of the government alone ought to deal, and when it confides to the citizen a right so important, it is, we think, the clear duty of this court to follow, but not to extend such legislative declaration beyond the class clearly stated in the statute. Our great respect for the wisdom of the eminent judge who wrote the opinions in those cases is such as to make us hesitate to dissent from any view expressed by him. But a careful consideration of the question involved has convinced us beyond question that by enacting article 1220 of the Penal

Code, the Legislature did not express the purpose or intend to justify a person in killing his wife when she was found in adultery with a man. By its express terms, the right of the husband to slay under those conditions was limited to the man with whom she was found taken in adultery. If under article 1220 of the Penal Code the Legislature in its wisdom had desired to justify the husband in killing his wife when taken in adultery, it was clearly its province to so declare, and in the absence of a legislative declaration to this effect, this court is without the right or the authority to furnish an accused with any such shield. By no rule of construction known to us would we be justified in extending the statute's protection to one who kills his wife when by its clear and unequivocal terms it limits the right of killing of 'one taken in the act of adultery with his wife.' So far as the Williams case, supra, and the Cook case, supra, are in conflict with the conclusions herein reached, the same are hereby overruled, and on another trial of this case we think the court should not charge on justifiable homicide under article 1220 of the P. C."

This holding was approved in the cases of Jordan v. State, 294 S. W., 1109, and Jimenez v. State, 280 S. W., 829.

We cannot agree with the contention of the appellant. No matter what our opinion might be upon the justice or injustice of article 1220, P. C., which justifies a homicide when committed by the husband upon one taken in the act of adultery with the wife, provided the killing takes place before the parties to the act have separated, it does not give the wife justification for her act if she should kill the woman taken in the act of adultery with her husband. The courts are not vested with the power to make laws but under the Constitution such power is vested alone in the Legislature, and the duties of the courts are to take and enforce them as they are written. If the Legislature in their wisdom has not given equal rights to the wife as they have given to the husband under article 1220, P. C., the courts are without power to do so.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.