C. L. MARTIN V. THE STATE.

No. 20092. Delivered March 8, 1939.
Rehearing Denied April 12, 1939.

The opinion states the case.

*Morris Pepper,* of Houston, and *William* Combest, of Paducah, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, JUDGE.—The appellant was tried for the unlawful killing of Austin Cochran, and was by the jury convicted of murder without malice and assessed a penalty of five years in the penitentiary.

The facts have given us much concern. It is shown by the State that on Sunday, August 29, 1937, about sundown, on the day of the killing, appellant came to the home of the sheriff of King County and told him that he had killed a man, whose name he did not know, down on the county line at a beer joint, and he gave the sheriff his automatic pistol. The sheriff immediately went down to this beer joint and found the deceased lying on the ground outside the beer house. There were three wounds on the body, and near it he found four or five empty cartridge shells about ten feet from the body, with one loaded shell remaining in the pistol. He found an open knife there by the body. On the right side about three or four feet therefrom. The knife was about three inches long, and the blade about two and a half inches long. The next State's witness was Mr. Warren, an undertaker, who took charge of deceased's body, and found three gunshot wounds thereon, two of such wounds being near the left nipple, and a third in the left leg. The two nipple wounds were classed by him as fatal. At this point the State rested, leaving the jury with an unexplained killing. The defense then proceeded to develop the facts, which we gather from a careful reading of the record to be, in substance, as follows:

It seems that the deceased came to this beer joint in the afternoon with three companions, all somewhat under the influence of intoxicants, and told the proprietor of this beer house that he had brought him a load of drunks. One of these men soon passed out and was not further mentioned in the testimony. Melvin Bearden, one of the deceased's companions, seemed to have continued drinking, and was in a belligerent mood, offering to fight anyone, and finally getting in a difficulty in which the appellant acted as a peacemaker. It further appears that there was a card game as well as a dice game in progress near this beer joint, and the deceased and Bearden made some complaint as to their treatment in one of such games, and they were jointly refunded some money that they had lost in such game. The deceased seemed to have become offended, probably at appellant, and threw an empty beer bottle into appellant's lap, addressing him and using an epithet. He said: "How do you like that," at which time it seems that deceased's companion, Bearden, had some kind of a plank in

his hand, and was offering to fight any person there. Appellant seemed to have turned the matter off with a remark that he did not like an empty bottle, that he would rather have a full one. It also appears that the gambling games were finally broken up and all parties were in a good humor, but continued their drinking. Finally the deceased came towards where appellant and others were standing, and had some kind of dark glasses over his eyes. At such time some one remarked that these glasses looked like railroad glasses. Whereupon the deceased seemed to become angry and took them off and threw them on the ground, using certain curse words, and, approaching appellant from the rear, struck him with his fist just back of the ear, staggering him; appellant turned and knocked the deceased down, whereupon the deceased reached into his pocket and produced the knife heretofore referred to, and rising to his feet started towards appellant. Many of the witnesses say that at such time appellant said "Stop him, he's got a knife;" that a witness named Phillips grabbed deceased, and that the deceased jerked loose from Phillips, who said to him "Don't do that Austin;" that the deceased said "Aw, hell," and jerked loose from Phillips, and took two or three steps towards appellant, who was backing up, and who told deceased again to stop; that deceased still had the knife in his hand and continued to advance, and then appellant shot him, and he fell and died there.

It will be noted that there was some impeaching testimony of some of appellant's witnesses. For instance the man Phillips, who was attempting to hold the deceased at the time he got up off the ground, was shown to have made a statement at a time previous to this trial that appellant had shot the deceased practically right out of his, the witness', arms; nevertheless the witness refused to so testify to such facts on this trial, and such impeaching testimony could not take the place of direct testimony.

The State was placed in the position where they had practically no witnesses at all that would have assisted it in the development of this case, they having to rely for their facts on appellant's witnesses alone. They were assisted, however, with the facts that on a Sunday afternoon the appellant, a man of family and mature years, was engaged in gambling with a bunch of drunken boys, and on account of some disagreement he had at least witnessed several near difficulties, doubtless caused by the intoxication of the participants therein; that this orgy finally culminated in the attack upon him, which resulted in the death of this unfortunate boy as a

logical culmination of their conduct at this time when they all should have been engaged in more enlightening pursuits. All these may have combined to have caused the verdict herein rendered. However we can only concern ourselves with the facts here presented, and while we are reluctant to ever set aside the verdict of a jury, we should not hesitate to do so when we become convinced that there is no testimony to sustain the same. In this cause we are convinced that the facts in this case are insufficient to show an unlawful killing, and it therefore becomes our duty to reverse this judgment and remand this cause, which is accordingly done.

ON STATE'S MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—After carefully re-examining the evidence in the light of the State's motion for rehearing, we are constrained to adhere to the conclusion expressed in the original opinion.

The State's motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.