### DUTCH DOVER V. THE STATE.

#### No. 8872.    Delivered May 6, 1925.

#### Rehearing denied December 2, 1925.

#### 1.—Manslaughter—Evidence—Properly Admitted.

Where, on a trial for murder, resulting in a conviction of manslaughter, the evidence disclosing a difficulty between deceased and appellant that occurred the night before, when the parties were playing poker, there was no error in permitting the State to prove the rules of a poker game, such evidence being material to an issue raised by appellant, and he having testified that he was familiar with the rules of poker.

#### 2.—Same—Evidence—Properly Admitted.

Where it was shown that a difficulty occurred between the deceased and appellant in a poker game, played by them the night before the homicide, there was no error in permitting a witness to detail the dispute between deceased and appellant at the time, all having occurred in the presence and hearing of appellant and deceased.

#### 3.—Same—Evidence—Cross-Examination—Inadmissible.

It having been shown that deceased and appellant had a difficulty at a negro's house, where they and others were playing poker, prior to the homicide, there was no error in refusing to permit appellant to prove on cross-examination of a State witness, that witness had played cards at the negro's house several times before. Such testimony had no bearing, directly or indirectly on the case, and was not a proper method of impeaching the witness.

**4.—Same—Evidence—Impeaching Witness—Properly Excluded.**

Where appellant offered to impeach a State witness by proving by him that he had been charged with theft of money in 1923, and it appeared that a complaint had been filed against him, charging theft, in a justice court, and that three grand juries had convened since the filing of such complaint, and no indictment returned against him, such effort to impeach witness was properly excluded.

**5.—Same—Evidence—Impeaching Witness—Offense Too Remote.**

It is not permissible to impeach a witness by showing that he had been charged with seduction twenty-four years prior to the trial. This occurrence was too remote, and the court properly excluded any reference to it. Following Emerson v. State recently decided by this court, and not yet reported.

**6.—Same—Evidence—Threats of Appellant—Against Deceased—Admissible.**

Where a difficulty occurred between deceased and appellant on the night before the homicide, there was no error in permitting a witness to testify that appellant had threatened deceased, while deceased was out of the room, and that he, the witness, had told deceased of such threats.

**7.—Same—Evidence—Held Properly Admitted.**

It has always been held that the movements of the parties at the scene of, and shortly before and shortly after a difficulty, are admissible in evidence, and there was no error in permitting a witness to testify that shortly before the homicide, he saw appellant come up on the west side of the house, and as he did so, the deceased left on the east side of the house.

**8.—Same—Evidence—Cross-Examination—Statement of Counsel—Not Improper.**

Where, on cross-examination of appellant, State counsel asked him if he had ever been charged with a felony, to which he answered "no". Appellant's counsel then charged that counsel for the State had not asked the question in good faith, but to prejudice the case of appellant, to which counsel for the State replied that he had been informed that appellant had been convicted of a felony, and assured the court that the question was asked in perfect good faith, no error is shown.

**9.—Same—Requested Charges—Covered by Main Charge—Properly Refused.**

There are eighteen bills of exception in this record, complaining of the refusal of the court to give special charges requested by appellant. Every issue presented in these requested charges was fully and correctly presented in the court's main charge, and the requested charges were properly refused.

**10.—Same—Charge of Court—On Temporary Insanity—Properly Refused.**

There was no error in the court's refusal to submit the issue of temporary insanity of appellant at the time of the shooting. The testimony of appellant himself clearly demonstrates that he knew everything that was going on, and was able to remember the minutest detail as to how the transaction occurred, and as to what was in his mind, at the time of the shooting, and the issue of temporary insanity was not raised by any other testimony in the case.

**11.—Same—Charge of Court—On Self-Defense—Properly Refused.**

Appellant presented a requested charge that the defendant is presumed to have acted in self-defense in shooting the deceased, until it is made to appear that he did not act in self-defense. The charge was properly refused. No case has ever been written in this State to the effect that when a party kills another, the presumption is that he acted in self-defense in the killing, and no error appearing, the cause is affirmed.

ON REHEARING.

**12.—Same—No Errors Shown—Motion Overruled.**

On rehearing no issues were presented excepting those passed upon in our original opinion. A careful re-examination of the record confirms us in the conclusion that all issues passed upon in our original disposition of the case were correctly decided, and the motion for a rehearing is therefore overruled.

Appeal from the District Court of Smith County. Tried below before the Hon. J. R. Warren, Judge.

Appeal from a conviction of manslaughter, penalty two years in the penitentiary.

The opinion states the case.

*Butler, Price & Maynor,* for appellant.

*Tom Garrard,* State's Attorney; *Grover C. Morris,* Assistant State's Attorney, for the State.

BERRY, JUDGE. Appellant was convicted in the District Court of Smith County for the offense of manslaughter and his punishment assessed at confinement in the penitentiary for a term of two years.

The Statement of Facts covers 129 pages, and there are thirty-seven special charges and thirty-eight bills of exceptions in the transcript. We have very carefully gone through this entire record and, on account of the very earnest insistence of appellant's counsel that many errors have been committed, we have given the case a great deal of time and thought.

On Saturday night, on or about the first day of September, 1923, appellant and deceased and other parties went out to a house occupied by one Bill Owens, a negro, where they engaged in a poker game, first playing draw poker, Sim Adkins, appellant, the deceased, Adams and Boggs indulging in this game. The record also shows that some whiskey was drank by the participants during the progress of the game. It seems

that this game of draw poker broke up because most of the participants went broke. After this draw game broke up, appellant and deceased, it seems, began a two-handed game of heads up stud poker. During the progress of this two-handed game some dispute arose about a pot, which seems to have been smoothed over, and the parties, appellant and deceased, again played for several hands and another dispute arose and deceased grabbed the money on the table and ran. The next morning about eight o'clock appellant and deceased met near a restaurant in the town of Bullard and the difficulty between them was renewed and the deceased was killed by the appellant, after the appellant had been shot by the deceased.

This is a sufficient statement of the facts to enable us to discuss the questions raised.

Bill of exceptions No. 2, the first in the record, complains of the action of the court in permitting the State to ask the witness, Adkins, concerning the rules of a poker game, the objection being that there was no evidence that the defendant knew what the custom was about the right of a party playing poker to go into his pocket after money. This bill is explained by the court to the effect that the defendant testified as to his familiarity with the rules of the game, and under this explanation no reversible error is shown by the court's action in admitting the testimony complained of.

By bill No. 3 appellant complains of the action of the court in permitting the State to ask the witness, Sim Adkins, as to whether anything was said there at the time of the dispute in the poker game as to who was wrong about it, and in permitting the witness to say that all of them that were around the board said that the deceased had won the money and that the defendant was wrong. This was the detailing of a conversation in the presence and hearing of the defendant concerning a matter about which appellant was fully aware at the time, and was a part of the details of the transaction that led up to the killing, and was clearly admissible.

Bill of exceptions No. 4 raises practically the same question as that just discussed in bill No. 3, and same shows no error.

By bill of exceptions No. 5 and by bill No. 10 appellant complains of the action of the court in refusing to permit him to ask the witness, Sim Adkins, how many times he had played poker at this negro Bill Owens' house before, and in refusing to permit the witness to answer such question, to the effect that he had played there several times. This testimony

was not admissible. It had no bearing, directly or indirectly, on the case, and was not the proper method of impeaching the witness, Adkins.

Bill of exceptions No. 6 complains of the action of the court in refusing to allow the appellant to ask the witness, Adkins, if it was not true that he was arrested and charged by complaint in the County Court of Smith County with the theft of money in 1923, and the bill shows that the witness, if he had been permitted to answer said question, would have answered that he was arrested and a complaint filed against him charging him with theft of money in 1923. This bill is qualified by the trial court with the statement that the matter inquired about was filed in the justice court and the record and the evidence shows that three grand juries have been convened since said complaint was filed and no indictments were returned as to said matter. The bill as qualified fails to show any error.

By bill No. 7 appellant complains of the court's action in refusing to permit the appellant to ask the witness, Sim Adkins, if he had ever been charged with the crime of seduction. The court qualifies this bill by showing that the crime about which this witness was asked occurred about twenty-four years ago. This occurrence was too remote, and the court properly excluded any reference to it. Emerson v. State, recently decided by this court and not yet reported.

Bill No. 8 complains of the action of the court in permitting the State to prove by the witness, Hensley, that he told deceased of a threat that the appellant had made against him. According to the record, this threat was made by appellant at the time the difficulty arose at the poker game the night before the killing and was conveyed to deceased while he was out of the house but still at the place where the game was being played and where the dispute concerning it occurred and where the threat was made by the appellant. Under these conditions the State had a right to show that the appellant had made the threat and that the deceased knew of such threat.

By bill of exceptions No. 9 appellant complains that the State was permitted to prove that on the morning a very short time before the fatal difficulty, in the town of Bullard, as appellant came up on the west side of a house the deceased left on the east side. We are at a loss to understand why appellant considers this testimony inadmissible. It has always been held that the movement of the parties at the scene of and shortly before and shortly after a difficulty is

admissible, and this testimony comes within this well known rule, and no error is shown in its admission.

Bill No. 11 complains of the court's action in refusing to allow the appellant to ask the State witness, John Beam, if it was not true that his uncle was then charged by indictment with selling whiskey in Smith County. This testimony, of course, was not admissible for any purpose, and the question itself should not have been asked.

Bill No. 12 complains of the following matter: Hon. N. E. Gentry asked the defendant while on the stand if he had ever been charged with a felony, to which he answered "No", and the defendant then and there excepted to the asking of said question by the private prosecutor, and as ground for said exception stated that it was a lead which could not be followed and that the only purpose the private prosecutor had in asking the question was to prejudice the defendant in his defense before the jury; and in response to these statements by appellant's counsel Mr. Gentry stated to the court that it had been his information that appellant had been convicted and he merely asked the witness the question to ascertain whether this was true and that the question was asked in good faith; whereupon the defendant objected to the statement of the private prosecutor and saved a bill of exception to the statement. Under the facts detailed, we can not say that any prejudicial error was shown in this matter. When counsel for the appellant, in preserving his exception to the asking of the question, made the statement that the only purpose the private prosecutor had in asking it was to prejudice the defendant in his defense before the jury, it occurs to us that as a matter of sheer self-respect the private prosecutor had the right to explain to the court that the question was asked in good faith. At any rate, the matter is not of such importance, in view of the minimum punishment, as to warrant us in saying that it shows reversible error.

By bills 13, 14 and 15 complaint is made of the court's action in refusing defendant's special charges bearing on the question of self-defense. The first of these charges sought to have the jury told that before they could convict the defendant they must believe beyond a reasonable doubt that when he shot the deceased he did not act in his self-defense. In the next charge he sought to have the jury told that in deciding whether the killing of deceased was justified they must view the facts and circumstances from the standpoint of the defendant, and also sought to have the law of reasonable appearance of danger ap-

plied; and the charge discussed in bill No. 15 sought to have the jury informed that in passing upon the question of self-defense the jury might consider previous threats and conduct of the deceased. Each of the matters complained of was fully covered in the court's main charge; paragraphs 7, 8 and 9 thereof contain all of the law applicable to this case on the questions raised by appellant in the special charges above mentioned; in fact, the court fully and favorably to the appellant presented in his charge the law of self-defense, of apparent danger, and of communicated and uncommunicated threats, and clearly told the jury that on the question of real and apparent danger the jury must view the facts and circumstances from the standpoint of the defendant and from no other standpoint. He gave a correct charge on the burden of proof, on the presumption of innocence, and on the presumption arising from the use of a deadly weapon in the hands of the deceased and, in fact, covered every feature of the case that was raised by any of the evidence, in a manner that was entirely fair to the appellant, and in many instances the charge of the court was more favorable to the appellant than were the special charges offered and about which complaint is made.

What we have just said disposes of bills 13, 14, 15, 16, 18, 19, 20, 22, 25, 26, 27, 30, 31 and 34.

By bill No. 23 and also by bill No. 36 complaint is made of the action of the court in refusing to charge on the question of temporary insanity. It is the appellant's theory that when deceased shot him at the scene of the killing he became temporarily insane and was not therefore responsible for anything he did thereafter. The facts as testified to by appellant while a witness in his own behalf do not support this theory. We quote the following from his testimony:

"It seemed like it kinder cut my senses off when he shot me. No; I did not realize what was going on around there and I could not see things good while I was dazed from that shot; when he shot me it shocked me all over, and I fell, I kinder staggered just a little bit and fell. I grabbed my gun and staggered back, and when I fell I just staggered this way, and when I fell I fell sorter over on this shoulder and my gun went back over my shoulder that way as I fell down about the time I struck the sidewalk. Yes, I shot a second shot. No; I could not see who I was shooting at when I shot the second shot, I could just see the bulk out there of something. At the time I fired those shots the blood was just spurting out of my nose. I could not see good, I couldn't hardly see. When I fired the

shots I couldn't tell what I was shooting at, I just could see the bulk of something, and I raised up on my elbow and shot. No; I could not tell that I was shooting at a man's back, I couldn't tell a thing about it.  No; if he had not shot me I would not have shot him, and if I had known he was going away from me I would not have shot him.  I shot him because I could not tell but what he was going to shoot me again, I did not know, I felt like he was, I couldn't tell the position he was in."

Instead of this testimony showing that the appellant was out if his senses at the time the shooting occurred, it clearly demonstrates that he knew everything that was going on and was able to remember the minutest details as to how the transaction occurred and as to what was in his mind at the time of the shooting.  Under these conditions, appellant was not temporarily insane and was not entitled to a charge on this question.

Bills 32 and 33 complain of the action of the court in refusing to charge on the right of the defendant to demand the return of money taken by the deceased at the poker game the night before.  The court gave appellant's special charge No. 30, which told the jury that if the deceased had money which the defendant in good faith believed belonged to him, then the defendant would have the right to approach the deceased and demand of him the payment thereof.

By bill No. 35 appellant complains of the court's action in refusing to charge the jury that the defendant is presumed to have acted in his self-defense in shooting the deceased until it is made to appear from the evidence beyond a reasonable doubt that he did not act in self-defense.  The court very properly refused to give any such charge.  No case has been cited, and none has ever been written in this State, to the effect that when a party kills another the presumption is that he acted in self-defense in the killing.

Bill 37 complains of the court's action in refusing to charge that the defendant had a right to approach the deceased and demand the payment to defendant of money if the jury should find that the deceased had money which belonged to the defendant.  This identical proposition was very properly submitted to the jury by the court in his main charge and also in special charge No. 30 which was offered by the appellant and given by the court.

We have carefully examined the entire record, and are satisfied that no reversible error is shown therein; and, the

facts being amply sufficient to support the verdict and judgment, it is our opinion that the case should be affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We briefly discuss each matter raised by appellant in his able motion. Bills of exception Nos. 3 and 4 complain of statements to and in the presence and hearing of appellant, involving the right or wrong of a certain dispute between him and deceased on the night preceding the homicide. This court has adhered to the rule that statements to and in the unquestioned presence and hearing of the accused, which call for a denial on his part, but to which he makes no denial or negation, may be proven against him. See Branch's Annotated P. C., Sec. 64, for collation of authorities. Such being the situation as evidenced by said bills of exception, it was not error on the part of the trial court to permit the testimony.

We are cited to no authority and know of none holding it error to allow the State to prove that a threat made by appellant against deceased was communicated to the latter. This matter is complained of in appellant's bill No. 8. Nor do we see the harm of allowing the State to prove, as set out in bill No. 9, that on the morning of the homicide deceased was in a building which appellant approached from the west, and that deceased left same going out an east door. Authorities cited by appellant which discuss the question of undisclosed motives of deceased, seem without application. Movements of deceased unknown to the accused, may be proven when they do not affect a defensive theory. Bozano v. State, 60 Texas Crim. Rep. 507; Singleton v. State, 167 S. W. Rep. 46; Eads v. State, 176 S. W. Rep. 576.

Though a question be asked by the State reflecting on some person neither a party to the record nor a witness in the case, if same be objected to and the objection sustained, this, while not proper practice, would not seem to present such erroneous action on the part of the State's attorney as would justify a reversal. This matter is complained of in bill No. 11. That our opinion referred to the witness named in this bill as being a State witness when in fact he was a defense witness, and that we stated that the complaint was of the refusal to allow

appellant to ask a State witness a certain question, was but an inadvertence and states no matter harmful to appellant.

Appellant objected to being asked, while a witness, if he had not been convicted of a felony. This objection was sustained, but appellant saw fit to reserve a bill on the ground that the purpose of the State's attorney in asking the question was to prejudice his case in the minds of the jury. Thereupon the State's counsel said that he had asked the question in good faith on information. The court instructed the jury not to consider this remark of State's counsel. We have carefully considered the matter and are unable to agree that it presents reversible error.

The proposition contended for in appellant's bill No. 35 is not the law. The presumption of innocence is not based on any acceptance of the truthfulness of appellant or any or all of his witnesses in asserting some reason or justification for what he did. It is hardly necessary to attempt to begin a new practice in this State of instructing the jury in cases where some defensive theory is interposed, that such defensive theory is presumed to be true until the State has shown it to be false. This is not in accord with Art. 52 of our Penal Code, nor with any authorities known to us.

The motion for rehearing is overruled.

*Overruled.*