### LEONARD BURNS V. THE STATE.

No. 16919.   Delivered October 17, 1934.
Rehearing Denied December 12, 1934.
Reported in 76 S. W. (2d) 516.

The opinion states the case.

*Otto Atchley,* of New Boston, for appellant.

*Elmer L. Lincoln,* Dist. Atty., of Texarkana, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed James S. Ashford by shooting him with a gun.

On the night of December 11, 1933, deceased and his wife were sitting near a window in their living room when appellant approached with a shotgun and fired through the window. The shot struck deceased in the back of the head, and he died from the effects of the wound the following day.

Testifying in his own behalf, appellant admitted upon direct examination that he fired the shot that killed deceased. He said: "I killed Mr. Ashford (deceased), and the reason I did it was that they (meaning deceased and the son of deceased) were going to kill me." We quote from appellant's confession as follows: "Last night, December 11, 1933, I made up my mind that I would go and kill Jim Ashford (deceased). After supper I asked Eugene Legg if he would make a little drive with me. He said he would. I put my shotgun in his car and buckled my pistol on me. * * * I got out of the car about Hugh Ashford's place. I walked south and got over the yard fence in the southwest corner of the front yard fence. I then went to the front of the house, and stood in front of it, on the ground, raised my gun, and fired through the window. I saw him in

the room before I shot, and at the time I shot I shot to kill him, and aimed the gun at him. * * * I had five buckshot shells with me and used one of them when I shot Mr. Ashford."

Testifying for the State, Eugene Legg stated that he went with appellant to a point near the home of deceased on the occasion in question and that appellant was armed with a shotgun; that after the car stopped appellant took the gun and left the car; that he (the witness) remained in the car; that he heard a shot and some hollering; that when appellant returned and while they were driving home he asked appellant who it was that was making the fuss; that appellant replied that it was Mrs. Ashford (the wife of deceased); that appellant said that he had "turned Mr. Ashford over," and that if they were caught he (appellant) would assume the responsibility.

It appears from the evidence that appellant had an insane brother who, because of having been a World War Veteran, was drawing $100 a month from the Veterans' Administration; that the deceased was guardian of the estate of the insane brother; that a controversy arose between appellant and deceased over the amount of money charged by deceased for the care of the ward and the allowance to the ward's mother; that appellant attempted to require deceased to make an accounting, but failed. It was the State's theory, supported by the evidence, that this controversy caused appellant to entertain feelings of ill-will toward deceased.

Bills of exception 1 and 2 disclose that the district attorney asked the attending physicians to describe in detail the wounds found upon the body of deceased. Before the question was asked, appellant, through his attorney, admitted in open court that the gunshot wound which deceased received directly produced and cause his death. Following this admission appellant objected to the physicians describing the wounds, on the ground that such testimony was irrelevant and immaterial, and calculated to inflame the minds of the jury. Upon the objection being overruled, the witnesses described the wounds as being on the back of the head. They testified that some of the shot had fractured the skull and driven the fractured parts into the brain, and also that there was lead in the wound. It is the general rule that a physician who has examined and described the wound may express an opinion as to the probable cause, nature and effect of such wound, and the consequences thereof, without violating the rules of evidence. Wharton v. State, 38 S. W. (2d) 72; Windham v. State, 248 S. W., 51. In Reeves v. State, 32 S. W. (2d) 471, we held that the attending physician was

properly permitted to testify as to the nature and position of the wounds inflicted upon deceased, notwithstanding the appellant's counsel admitted that the wounds caused death. See Claxton v. State, 4 S. W. (2d) 542; Simpson v. State, 263 S. W., 273. It follows from what we have said that we are of the opinion that the bills of exception fail to reflect error.

Appellant concedes that bill of exception No. 3, which is a by-standers' bill, and which was controverted by the State, shows no error. We have examined the bill and agree with the position taken by appellant.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In view of appellant's motion for rehearing we have again examined the bills of exception which are thought to present error. We are confirmed in the view that the questions presented by such bills were properly disposed of in our original opinion.

The motion for rehearing is overruled.

*Overruled.*