### LESTER PARKER V. THE STATE.

No. 20489. Delivered October 18, 1939.
Rehearing Denied January 31, 1940.
Application for Leave to File Second Motion for Rehearing
Denied (Without Written Opinion) February 21, 1940.

The opinion states the case.

*Adams & McAlister,* of Nacogdoches, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder; the punishment assessed is confinement in the state penitentiary for a term of two years.

Appellant's principal contention seems to be that the evidence is wholly insufficient to warrant and sustain his conviction. We are unable to reach such a conclusion from a careful study of the record.

The State's testimony, briefly stated, shows that on the night of January 23, 1932, J. A. Honeycutt, Mrs. Rush Payne, Bonnie Payne and the deceased, were on their way to San Augustine in a car. They stopped at a drug store and from there drove out and stopped on the side of a road. Shortly thereafter, appellant and his companions came along and stopped. The deceased went over to appellant's car and asked for some whisky. Appellant told him he had none, and appellant's companion, Hanzel, then gave the deceased a pint of whisky. When the deceased returned to his car he remarked: "I got a full pint instead of a drink." Following this incident, appellant and his companions proceeded to Mark Mills. While on their way, appellant remarked to his companions that he intended to kill the deceased because the deceased was going to the sheriff and he, appellant, was going to be arrested for having whisky in his car. He then threw the balance of the whisky remaining in the car out and broke it. At Mark Mills they met the appellant's mother, Caro Parker, and his brother Isaac, in a car. Appellant and his companion, Mary Hanzel, left their car and got into the car occupied by his mother and brother, While sitting in the rear seat, appellant had a gun in his hand and remarked: "If I meet Mr. Amey, he is my man." After taking Mary Hanzel home, they finally drove down a side road, where the deceased and his companions had parked their car and gotten out. It appears that the deceased had raised the cover of the back of his car when he observed a car coming down the hill. When the oncoming car had reached a point near the deceased's car, the deceased walked rapidly out into the road, at which time appellant fired several shots. After the car had passed, the deceased walked up to his companion, Mr. Honeycutt, and remarked: "They got me." He fell on the ground and soon died. Deceased was shot in the back below the right shoulder blade and the bullet came out below the left nipple and lodged between the body and the underwear.

Appellant offered testimony which showed that the deceased had threatened to whip him; that he was following him around and when he and his companions were driving down the road and had reached a point near where the deceased and his companions had parked their car, the deceased ran out into the road and fired several shots, whereupon appellant returned the fire in self-defense, since he was afraid the deceased would either kill him, his mother, or his brother.

It will be noted that the testimony recited raised an issue of fact which was submitted to the jury for their consideration under an appropriate instruction from the court.In order for the

court to hold, as a matter of law, that appellant acted in self-defense when he killed the deceased, the evidence on that question would necessarily need to be uncontradicted so that no issue would be raised. Here we have appellant making threats to kill the deceased just an hour or two before he did kill him. Deceased was shot in the back and then appellant evaded arrest by leaving the country. Even if the deceased had run out into the road, he did not, according to the State's witnesses, have a pistol in his hand at the time. We deem the evidence sufficient to sustain the jury's conclusion of appellant's guilt.

Bills of exceptions numbers one through four complain of the introduction of testimony into the record while Lewis Hanzel, a witness for the State, was testifying. The State, it seems, elicited from Hanzel the fact that he had a date with the deceased on the night in question and was supposed to meet him at his (Hanzel's) house. Appellant objected to all this testimony on the grounds that it was hearsay, uncommunicated to the defendant, prejudicial and inflammatory. We note from the record that the witness further testified that he did not meet the deceased, but that the next time he did see him was after he had been killed. We are at a loss to understand how or in what manner this testimony was hurtful to the appellant or prejudicially affected his rights.

Bill number five complains because the State, on direct examination of its witness, Lewis Hanzel, asked him to state whether the deceased, on the night in question, was coming to his house after some whisky. Appellant's objections thereto were about the same as presented by bills one through four. However, the court sustained the objection and instructed the jury not to consider the same for any purpose. The court's prompt action in this respect cured any error that might have resulted therefrom.

By bill of exception number six, appellant complains because the District Attorney asked the witness, Emil Hanzel, one of the State's witnesses, the following question: "Where were you and the defendant going on the evening of the night Laurie Amey was killed?" The witness replied: "We were going to a dance to sell some whisky." Appellant objected to the answer of the witness and the question propounded because it constituted evidence of an extraneous offense and was an attempt to accuse the defendant of another crime other than the one with which he was charged; that the defendant's reputation had not been put in issue at the time. The objection was overruled and appellant excepted.

We find in the record that the appellant, by his own witness, Bonnie Lee Henderson, proved that he did have whisky in his car at the time, and from many sources comes evidence that he was transporting it. Appellant, himself, testified as follows: "He * * * got out of the car and came up and said: 'You got any whisky?' I said, no, and he said 'I know damned well you have and I want some of it.' I said, You ·can't get it. * * * * * * Well he demanded it * * right on and Emil Hanzel had about a half pint of whisky in the pocket of the car that was mine and I told him to give it to him."

One of the parties who was with appellant in the car on the night in question testified that appellant became uneasy that the deceased would report him to the sheriff and threw the balance of the whisky out of the car and broke it.

Transportation of whisky at the time of this alleged offense was a felony of equal gravity to that of having whisky for purpose of sale. The same statute, Art. 666 P. C. of 1925, embraced both offenses. Hence it is obvious that appellant himself, as well as other of his witnesses, testified that he was guilty of transporting whisky—an extraneous offense. It is a well-settled rule in this State that when testimony of a similar nature as that objected to is admitted from some other source without objection, no reversible error is shown. See Whitehead v. State, 116 S. W. (2d), 703; Sparkman v. State, 82 S. W. (2d), 972; Enix v. State, 16 S. W. (2d), 818; 112 Tex. Crim. Rep., 376. Moreover it appears that the killing was the result of the whisky transaction.

By bill of exception number eight, appellant complains because he was not allowed to introduce in evidence a judgment showing that a former indictment against him for the same offense had been dismissed. The bill does no more than complain because he was not allowed to show this judgment. Its relevancy is not shown in any way. Under these circumstances, the action of the court was proper in excluding the same.

Appellant has addressed a number of objections to the court's charge. We have examined the charge carefully, in the light of the objections and believe the same was a fair application of the law to the facts, and that the charge is not subject to the objections addressed thereto.

No error of a reversible nature appearing in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has

been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant complains in his motion for a rehearing of our original opinion herein on account of our statement of what are the facts shown by the State's testimony. It is true that such opinion does not contain a complete account of all the facts, but merely the salient facts proven by the State in order to show whether a sufficient basis was there present upon which to place the verdict of the jury.

The testimony does show that at the time the deceased was killed he had a pistol in his hand, and it further shows facts present from which the jury could have decided that such pistol was not fired at the place where the deceased met his death.

Complaint is also made of the statement that the deceased was shot in the back. Such statement was possibly based on the testimony of the witness Alford, as follows: "I was present when the body was undressed. I saw the location of the wounds. The bullet went in his back and came out here. There was a hole through a little jacket and un(der) clothes on the back and there was not a hole through the underclothes in front; and when he undone the collar and tie the bullet was laying right there." Again we find in Charlie Minton's testimony the following: " * * * I know the position of the wound on the body. The wound was right under that right shoulder, * * * a little behind the right arm; about right along there. I didn't see any shot there on that arm. The shot came out right along there, about under the left titty."

We think under the testimony above quoted one would be justified in saying that Mr. Amey was shot in back of the right shoulder, and the shot came out at about the left nipple. We do think the following statement inapt and should be withdrawn from the original opinion: "Even if the deceased had run out into the road, he did not, according to the State's witnesses, have a pistol in his hand at the time." Otherwise than the just above quoted paragraph, we are of the opinion that the statement of the State's testimony fairly reflects the record before us. It is surely understood that such a statement, however, does not attempt to set forth all the testimony, nor to offer the appellant's defensive testimony. Same was

merely set forth in order to show that there was a sufficient amount of testimony in favor of the State upon which to uphold the verdict of the jury. Had they accepted the appellant's version of the transaction as shown by his witnesses, there would have been no appeal present on account of the fact that his witnesses showed a clear case of self-defense. The jury, however, as arbiters of the facts, accepted the State's version thereof, and we are bound thereby.

We find an exception to the trial court's refusal to allow appellant to introduce an order dismissing a previous indictment for this same offense. It appears that this killing took place in the year 1932; that appellant fled and was finally aprehended six years thereafter in the State of North Carolina and brought back to Texas in 1938, and again indicted for this offense. That he was a fugitive was amply proven not only by the officers but also by his own testimony, and we can see no materiality to the fact that the old indictment was dismissed. Surely on account of his continued absence such a dismissal could have naught to do with the trial of this cause. We see no error in the trial court's refusal to allow the introduction of this order of dismissal.

There was a wide variance between the testimony of the State's witnesses and that of the appellant. The jury seemed to have accepted the version of the State's witnesses, and, according to their testimony, there was sufficient testimony to show appellant's guilt. The case of Martin v. State, 126 S. W. (2d) 649, is not a case in point herein. It might be inferred from the State's testimony that the deceased did not fire his pistol at the scene of the killing. The State's case herein is much stronger than the presented facts in that case.

The motion for a rehearing will be overruled.