EVERETT BRILEY v. THE STATE.

No. 20,618. Delivered November 29, 1939.
Rehearing Denied January 17, 1940.

The opinion states the case.

*Denman & Fowler*, of Nacogdoches, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant and his brother, E. D. Briley, were jointly indicted charged with the unlawful killing of J. B. Williams on October 17, 1938. Upon a joint trial therefor E. D. Briley was acquitted, and appellant was convicted and given a penalty of five years in the penitentiary.

The facts show that appellant and his brother were the owners and operators of a small sawmill in Nacogdoches County, and that Mr. Williams, the deceased, had worked for them at different times. We also gather from the testimony that a settlement between the deceased and appellant and his brother had been had, and that appellant owed Mr. Williams the sum of $2.72. That at the time of the homicide E. D. Briley and the deceased were engaged in a difficulty which terminated in a fist fight, at which time this appellant entered into the transaction and struck the deceased on the head with an oak stick, fracturing the skull, which injury resulted in the death of Mr. Williams a short time thereafter. The appellant claimed self-defense, his contention being that Mr. Williams was the aggressor and made an attack with the oak stick upon the brother who was acquitted, the appellant taking the stick away from the deceased and throwing it away; that the deceased then pro-

duced a knife with which he struck at and cut E. D. Briley; that the deceased then turned on appellant with such knife, and appellant then picked up this oak stick, and as Mr. Williams rushed at him he struck the deceased the blow that resulted in his death. The testimony shows that this oak stick weighed about thirty-five or forty pounds and was about five feet long. The theory of the State, and its testimony, vigorously contested the defense theory, and it showed by witnesses that the appellant was in pursuit of the deceased, who was fleeing, when struck by this stick on the rear portion of his skull by the appellant. In any event the truth of these two different theories was a matter to be ascertained by the jury, and they evidently discarded appellant's theory and accepted that of the State, and we do not feel like disturbing their solution of the matter. We think the testimony sufficient to sustain the jury's finding thereon.

Appellant's bill of exceptions No. 1 complains of certain remarks of the county attorney in the opening address to the jury, in which he said, among other things, the following: "* * * My contention is when a man has killed another, it is a rare exception that he has to do it. You don't hear of those things often. Do you know we try three or four murder cases here at every term of this court, and we ask them—," at which point he was evidently interrupted by appellant's attorney who excepted to the last sentence in the above quotation on the main ground that same was evidence out of the record, and was prejudicial and made for the purpose of prejudicing the minds of the jury against the appellant. Upon the offering of such objection the trial court instructed the jury to disregard such statement, but the appellant contends that such remarks were so prejudicial and inflammatory that error in making the same could not be cured by the trial court's instruction to disregard them. We are not in accord with his contention. The amount and kind of cases tried at the term of the court was a matter of public record, doubtless known to many of the citizens of the county, and the mere statement that three or four murder cases were tried during each term of this court would not be calculated to so inflame the minds of the jury that such a condition could not be controlled by the instructions of the careful trial judge. This bill is overruled.

Bill of exceptions No. 4 complains of what is termed misconduct of the jury in that while deliberating in the jury room, after having finished the testimony and having heard the arguments of counsel, it is alleged that other and further testimony

was heard by the jury. This is based upon the fact that practically all of the jurors swore, in the hearing of the motion for a new trial, that the juror L. A. Sitton made the statement in the jury room that "These defendants had planned to kill Mr. Williams that morning; this was all a planned affair; they planned on killing Mr. Williams that morning."

There seems to be no contradiction among the jurors as to what was said by Mr. Sitton, nor the time that it was said. There also seems to be no confusion as to its effect upon the jurors, nor as to their understanding of the remarks. We quote from the testimony of one of the jurors on the hearing of the motion for a new trial: "He (Sitton) did not tell us nor anybody in my presence that he knew anything about the case except what he heard from the witness stand. He did not say or do anything to indicate to me that he knew anything about it, except what he heard from the witness stand. Mr. Sitton did not say or do anything to indicate to me that he was making the statement upon anything outside of what he heard from the witness stand on the trial of the case; he merely said he believed it was a planned affair, that they intended to kill Mr. Williams that morning,—both of them, therefore he was for convicting both of them."

To the same effect was the testimony of the remaining jurors who testified.

Mr. Sitton himself testified, in part, as follows: "I did not know E. D. Briley or Everett Briley before this trial. I had not heard anything of the facts of the case before I was selected as a juror—not a thing about it. No one had talked to me about this case before we tried the case. No one outside of the jury talked to me during the trial of the case about it, and no one had attempted to talk to me about it before or during the trial of the case; if they did, I didn't know anything about it. In making that statement, I based my opinion solely upon the evidence I heard from the witnesses there; that is everything I based it on; in rendering my verdict; that and the law given us in the charge of the court. I did not know anything or consider anything outside of what I heard from the witness stand in rendering my verdict. In making that statement, I made the statement as my conclusion that I had reached from the evidence I heard in the case—that they both planned to kill the man when they went out there—just what I heard on the witness stand. I still believe that. I heard the witnesses testify; they were both out there; and I heard both the defendants testify. And from the evidence that I heard from the

witnesses I reached the conclusion that they both intended to kill Mr. Williams when they went out there that morning. I did not consider anything other than the evidence and the law given in the court's charge when I made that statement."

We gather from these quoted statements as well as the balance of the testimony that the juror was merely giving his opinion as to the impression that the testimony of the witnesses had made upon his mind, and the deductions he had drawn therefrom. We can see no impropriety in his making such a statement to his brother jurors when they began their discussions in the privacy of the jury room. Such a full and free discussion among themselves is to be commended, especially in an effort upon the jury's part to get together upon a satisfactory verdict, and we can see no reason for censure therefor.

We have carefully considered all matters presented to us, and we have found nothing that is deemed erroneous.

The judgment is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

KRUEGER, Judge.

Appellant, in his motion for a rehearing asserts that he is entitled to a reversal on three grounds. The first is on the alleged improper argument of the county attorney. This matter is fully discussed in the original opinion and we see no need of a further discussion. The argument complained of was not of a highly inflammatory and prejudicial nature, and the prompt action of the careful trial judge in sustaining appellant's objection thereto and his instruction to the jury not to consider the same cured the error, if any. Not every improper remark of the prosecuting attorney will require a reversal. It is only where the argument is of such prejudicial nature as was calculated to, and probably did, produce a conviction or enhance the punishment. See Tweedle v. State, 16 S. W., 544, 29 Tex. Crim. Rep., 586; Davis v. State, 154 S. W., 550; Hardy v. State, 31 Tex Crim. Rep., 289; Howard v. State, 53 Tex. Crim. Rep., 378; Hatley v. State, 109 S. W. (2d) 1063.

He next contends that the evidence is insufficient to justify and sustain his conviction, in that the State failed to show that he did not kill the deceased in self-defense. He contends that Glenn Lavender testified that he saw appellant pick up a stick and run towards the deceased, but did not see appellant strike the deceased, as he was leaving the scene of the difficulty. He contends that this court cannot assume that appellant did not

strike in self-defense. To show that such an assumption is unnecessary, we quote from the testimony of Lavender as follows: "After they (referring to E. D. Briley and the deceased) stopped fighting * * I saw Everett Briley come up with a pole, and Mr. Williams was standing there and he broke and run and Everett (the appellant) ran towards those two little lumber piles there off west. Mr. Williams was running from him and Everett had a pole running after him. * * Everett was running toward Mr. Williams and Mr. Williams was running away from Everett Briley."

Mrs. Williams, who was near the scene of the difficulty, and who carried her husband home, put him to bed and summoned the neighbors, testified as follows: "His skull was crushed in right in the back of his head, knocked in like. * * The only wound I found was in the back of his head * * *. I say my husband was hit in the back of the head and his skull crushed in."

She saw no stick or knife anywhere on the ground where he had fallen, and found his pocket knife in his pocket. The doctor testified that the lick which deceased had sustained on the head was sufficient to fracture the base of the skull and produce his death. We think the evidence in this case is such as would lead any unbiased mind to the logical conclusion that appellant voluntarily and without excuse or justification killed the deceased. The State is not required to negative every possible defense. The evidence is certainly sufficient to allow the jury to come to the conclusion of a killing without excuse or justification.

The complaint with reference to the misconduct of the jury is, in our opinion, without merit. The remark made by the juror was but the expression of his conclusion from the testimony before them under the ruling of the court.

Appellant's motion for a rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the court.