J. W. PARKMAN V. THE STATE.

No. 23171. Delivered December 5, 1945.
Rehearing Denied January 23, 1946.

The opinion states the case.

*E. A. Bills,* of Littlefield,, and *Cecil H. Tate,* of Muleshoe, for appellant.

*Harold M. LaFont,* District Attorney, of Plainview, *T. R. Odell,* Special Prosecutor, of Haskell, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

Under an indictment charging a malicious killing, appellant was convicted of murder without malice and his punishment affixed at three years' confinement in the penitentiary.

Appellant presses upon us his contention that his plea of self-defense was so abundantly established by the uncontradicted testimony that the jury was not warranted, as a matter of law, in rejecting same.

In making this contention, he recognizes the controlling rule to be that in order for a reviewing court to hold, as a matter of law, that a defendant in a homicide prosecution killed in self-defense, the evidence must be uncontradicted and no issue thereon presented for the jury's determination. Parker v. State, 138 Tex. Cr. R. 478, 136 S. W. (2d) 229; Patton v. State, 129 Tex. Cr. 269, 86 S. W. (2d) 774.

As early as 1884, in the case of Smith v. State, 15 Texas App. 338 at page 346, this Court announced the rule in determining when self-defense is established as a matter of law to be as follows:

"It is a well-settled rule of law that if, at the time of the killing, the conduct of the deceased, viewed in the light of all the circumstances, was such as to create in the mind of the defendant a reasonable apprehension of death or serious bodily injury, the defendant would have the right to kill, whether the danger was real or apparent.

"Was the conduct of the deceased in this case of such character as was reasonably calculated to create in the mind of the defendant this apprehension of death or serious bodily harm? Could any other inference be drawn from his conduct than that he intended to murder the defendant? Was not this the only reasonable conclusion which could be made from the facts? If so, is it not reasonable and just to presume that the defendant believed his life to be in danger, and shot his adversary to save his life? * * *"

It is in the light of the rules stated that the instant facts are analyzed:

Deceased, R. C. Dennington, forty years of age, and Nora Dennington, the daughter of appellant, had been married about twenty years at the time of the fatal difficulty. They had accumulated a comfortable community estate, notwithstanding the fact that they had considerable trouble during their marriage. They had separated some four or five times but each time a reconciliation was affected. However, on Sunday afternoon, November 5, 1944, Mrs. Dennington left the deceased and went to the home of her father. The next day, Monday, she filed a suit for divorce and, on that same day, she and deceased entered into a written agreement as to a division of the community estate, in which —among other things—it was agreed that she should have the homestead and household furniture. The immediate cause of the separation and divorce proceedings, as testified to by Mrs. Dennington, was a series of mistreatments culminating in physical abuse, threats on Sunday afternoon to kill her, and the further fact that deceased had been bootlegging whisky for some time and was preparing to go into that business on a larger scale. Mrs. Dennington testified that on Sunday night she told her father of the mistreatment, threats, and plans of the deceased

On the day of the homicide (November 13, 1944) Mrs. Dennington, accompanied by her father, drove to the little town of Bula, in Bailey County, where deceased was operating a cafe, for the purpose of obtaining from the deceased the key to the house and to get a stove from the house. Appellant and Mrs. Dennington drove to the front of the cafe and "honked the horn." Deceased was not in the cafe but was across the street at a filling station. He saw them and came to the car on the driver's, or appellant's, side. Upon being asked by Mrs. Dennington for the key to the house, he repudiated the previously agreed property settlement and said to her, "I am not giving you a God Damn thing only what you can get out of court." To this appellant replied, "That's all right," and started to drive away as if to turn around in the street. The car moved a short distance in that endeavor when Mrs. Dennington called to appellant to "Look out." Thinking deceased was about to attack him, appellant reached out and got a pistol from the glove compartment. About that time, a rock thrown by deceased came crashing into the car through the open window by the side of appellant, striking the dash or instrument panel of the car. Deceased was to the back and side of the car at that time. Appellant, seeing that deceased did not have a gun, threw the pistol back into the glove compartment and attempted to drive away. In so doing, he suddenly applied the gas to the car, causing it to choke down and jump. The car moved a short distance in this condition.

"The next thing I knew," appellant testified, "* * * something hit the glass behind me, and I thought well he had just taken a shot at me, and I just reached and got my gun and stopped the car and got out. When I did he was just behind, a little to the left, just behind and kinda to the left part of my car. He kinda blundered and, oh, just about half way fell; kinda stepped in a low place and about half way fell. And when he raised up, why I asked him to stop. I asked him to stop. I saw he didn't have no gun. Then he got straight, he started at me with that, and I shot over him, thinking maybe he would stop, and he kept coming, and I dodged him and shot over him again, and he just kept crowding me and I thought the only thing to do was to stop him. This looks like the club he had in his hand. He was coming with that stick like that, just come right down like that (indicating), it looked, the way he was coming. He didn't hit me on the head, because I just knocked his lick off. My hand caught his lick right there (indicating). He hit me right across there and knocked a hole in my hand there with the stick. I just grabbed it, caught it when he come at me there, caught it like that (indicating).

"If I hadn't warded off the lick with my hand like this, he would have hit me in the head with the stick, the way be was coming. He kept hitting me all the time my hand was already cut and bleeding and bruised. He was still coming on me with the stick. He was still coming. I knew I couldn't ward it off always, because my hand was already hurt.

"During this time I was kinda backing, backing trying to get away, trying to keep him from hitting me. He kept right on coming and just—it looked like it was me go down or him, and it looked to me like he was doing his best to get to me to put me down. As to whether I was afraid he would kill me, I knew he would kill me if he could get to me. * * *

"When I shot the last shot at him he was right up on me and over me with that stick when I shot the last shot. * * * I figured that if I didn't stop him that he would get me."

The stick above referred to was identified as being a piece of lumber 2x2, twenty-four to twenty-six inches in length. The weight was not given.

According to appellant's testimony, four shots were fired by him, the first two of which did not hit the deceased. The third struck him in the right shoulder, while the fourth and fatal shot struck him just under the chin.

Appellant was supported in his defensive theory by Mrs. Dennington and other witnesses. He proved a good reputation for being a peaceable and law-abiding citizen and for truth and veracity, which was not assailed by the State.

The facts heretofore stated are from the standpoint of the appellant and are those upon which he bases his insistence that the jury was not authorized—as a matter of law—to reject his theory of self-defense.

If we correctly comprehend appellant's contention, it is that deceased began the difficulty when he threw the rock at appellant and into the car, followed by the breaking of the glass in the door behind the appellant—all with the idea, on the part of deceased, to injure appellant or to cause him to get out of the car in order that he might attack him with the stick and that the attack did follow when the appellant got out of the car. Thus, he insists, his self-defense was complete and perfect.

Now we turn to the State's evidence to see if issues of fact arise thereunder, contradictory of appellant's testimony.

The witness Mrs. J. R. Leath, who was working for deceased in the cafe and who was in the cafe at the time, testified:

"I did not see Romie Dennington (deceased) throw a rock in the car. I could see the car and see Romie Dennington at that time. He did not throw a rock."

Thus, appellant's testimony was directly contradicted in that particular.

The witness L. E. Nichols, who was about sixty or seventy feet from the car and saw deceased approach the car with the stick in his hand, testified, upon direct examination, that he did not see deceased hit the car with the stick and that he was in plain view of the car and the deceased. Upon re-direct examination, he testified:

" * * * he (deceased) didn't hit the car after the car stopped. That's all I know."

Thus, an issue of fact was raised as to whether deceased struck the car and broke the glass door therein, as contended by appellant.

Do the State's witnesses contradict appellant as to what happened immediately before and at the time the fatal shot was fired?

All the witnesses, both for the State and appellant, agree that as deceased came around the back of the car, he slipped or fell.

The witness Weaver said that he fell "plumb to the ground, flat on the ground, flat on his side." This witness also testified that deceased had not gotten erect from his prone position when the first shot was fired. In this, he was corroborated by the witness Leath, who testified that he heard a shot and, looking in the direction thereof, saw deceased "getting up off the ground, on his hands and knees."

The State admits that the deceased was striking at the appellant with the stick but insists that such was in his own defense, an endeavor to knock the pistol out of the hands of appellant after the appellant had first opened fire on him. This theory of the State appears to be definitely supported by the testimony of some of the witnesses for the State, and especially by the witness Leath when he testified—without objection:

"He was striking at the gun, which I would have struck at too, or anybody else."

It appears, therefore, that the State's testimony was sufficient to present an issue of fact as to the defensive theory, not only as to who started the difficulty and how it began but also as to whether appellant acted in self-defense.

It must be remembered that in order for the presumption to arise of an intent to kill, on the part of deceased, under Art. 1223, P. C. the instrument used must be a deadly weapon, per se, or one which, in the manner of its use, was calculated to produce that result.

Here, the 2x2, twenty-four to twenty-six inch stick was not a deadly weapon, per se. Whether it became such from the manner used was a fact question for the jury. We do not have here a case where the deceased was making an attack with a deadly weapon, per se, and therefore a presumptively deadly attack.

The conclusion is reached that the facts do not bring this case within the rules stated, and this Court would not be au-

thorized, therefore, to set aside the finding of the jury upon the disputed issues of fact.

In explaining why deceased fell as he went around the rear of the car, as also to combat the testimony of Mrs. Dennington as to the prior assault deceased made upon her, causing the separation—which fact both she and appellant testified was communicated to appellant before the killing and as tending to show the physical condition of the deceased—the State introduced testimony showing that deceased walked in a stumbling, hesitant, stooped manner caused by sickness occurring some months prior to the killing.

As to this matter, one witness testified:

"As to whether or not Romie (deceased) was active at the time I am talking about, well, no, Romie had lost his health along in the spring some time, and it left him kinda dizzy."

This testimony was objected to as being prejudicial because the witness was not shown to be qualified to testify as to the state of health of the deceased. The objection was overruled and such action is assigned as error in a bill of exception. After the objection had been overruled, to meet the objection the State showed that the witness did know of the sickness and that the effect thereof was that it "made him dizzy." Upon objection being again interposed, the trial court withdrew from the jury's consideration the testimony of the witness wherein he said that the sickness of deceased "made him dizzy."

As thus presented, we fail to see wherein error was committed by the trial court. Moreover, testimony to the same effect as that objected to was given by other witnesses without objection—particularly the witness Leath, which nullified the objection in the first instance, McLaughlin v. State, 4 S. W. (2d) 54; Countee v. State, 44 S. W. (2d) 994, 119 Tex. Cr. R. 131; Graham v. State, 69 S. W. (2d) 73, 125 Tex. Cr. R. 531; Montgomery v. State, 31 S. W. (2d) 440, 115 Tex. Cr. R. 469.

The State sought to introduce in evidence the pistol with which appellant admitted he killed the deceased. Appellant's objection was sustained upon the theory that his having admitted he killed deceased with a pistol did not warrant the State to exhibit the pistol to the jury.

After the appellant's objection had been sustained, the State endeavored to get before the jury a description of the pistol—the size and caliber thereof. Witnesses were interrogated relative thereto, and each time appellant's objection was sustained. Appellant claims that the action of State's counsel in endeavoring to get a description of the pistol before the jury, after the court had refused to permit its introduction, constitutes prejudicial error.

In the first place, the pistol was admissible in evidence. An accused cannot, by admitting damaging features of the State's case, cut it off from making proof thereof. 42 Tex. Jur. 78, Sec. 55; Beard v. State, 171 S. W. (2d) 869; Burns v. State, 76 S. W. (2d) 516, 127 Tex. Cr. R. 356; Reeves v. State, 32 S. W. (2d) 471, 116 Tex. Cr. R. 451.

By special requested charge, appellant sought to have the jury instructed that the burden of proof was upon the State to prove that the appellant did not act in self-defense when he shot the deceased. In other words, it is appellant's contention that when self-defense arises under the testimony in a homicide case, the burden of proof is upon the State to disprove that defense in order to secure a conviction. Such is not the law. Dover v. State, 277 S. W. 675, 102 Tex. Cr. R. 113; Briley v. State, 135 S. W. (2d) 125, 138 Tex. Cr. R. 249; Art. 46, P. C.

Upon cross-examination of Mrs. Dennington, wife of deceased, the State laid the predicate to impeach her as to a statement she denied having made prior to the homicide, to the effect that if deceased did not give her her part of the property, her daddy (appellant) would kill him. When the State offered the impeaching testimony, the court sustained appellant's objection thereto. Appellant contends that the mere offer of this testimony was serious error.

To this contention we cannot agree. We fail to see wherein prejudicial error is reflected.

The facts being sufficient to support the verdict and finding no reversible error, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant's motion reiterates his contention that the testimony shows as a matter of fact, as well as law, that appellant killed Mr. Dennington in appellant's own self-defense when he shot the deceased. In answer thereto, we can only reiterate that there is testimony from the State's standpoint that appellant started shooting at deceased while deceased was upon the ground, or just arising therefrom, and not while he was making an attack upon appellant. Our original opinion sets forth such testimony. It is true appellant and his daughter make out a case of self-defense, but we do not feel that we should ignore the State's testimony, and especially so since same has been given credence by the jury. Evidently the jury did not give full credence to the plea of self-defense, and we do not feel justified in setting their verdict aside.

We see no reason to recede from the holding in our original opinion, and the motion will therefore be overruled.