Opinion issued June 12, 2008


 











In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00177-CR






CHARLES ALPINE, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 184th District Court

Harris County, Texas

Trial Court Cause No. 1092935






MEMORANDUM OPINION


 A jury convicted appellant, Charles Alpine, of the felony offense of aggravated
assault with a deadly weapon, enhanced by a prior felony conviction. The trial court
assessed appellant's punishment at imprisonment for 45 years. In two points of error,
appellant argues that the evidence presented at trial was legally and factually
insufficient to support the verdict. 

 We affirm. Background

 On July 29, 2006, Lisa Trevino, the complainant, and her five children arrived
at her husband, Noe Trevino's, place of business shortly before his shift ended at
midnight. The complainant backed her SUV into a handicapped parking space in
front of the building. Because of previous incidents that had occurred on the
premises, Noe asked the complainant to wait with their children inside the lobby of
the controlled building until it was time for him to leave. At the end of his shift, Noe
advised his wife that she could go before him and begin loading the children into the
SUV while he clocked out of work. While placing the children in the SUV, the
complainant heard appellant yelling and swearing at her and her children from behind
a truck in the parking lot. The complainant reacted by rushing into the SUV from the
passenger's side before the children could be completely buckled in. While she
climbed from the passenger's side over to the driver's seat, the complainant called
Noe from a cell phone to alert him that she and the children were being attacked. 
Appellant made statements to the complainant and her children including, "Come
here, you b****. I'm going to get you." When appellant hit the side view mirror
with what she perceived to be a bat, the complainant started her SUV. She called 911
and moved toward a grass median. Appellant followed and hit the hood twice more
before the complainant could drive off and call 911 again. The complainant drove
to a nearby police substation. After an officer met her there, she returned to the crime
scene.

 After Noe got the telephone call from his wife, he exited the building and saw
his wife jump into the vehicle and move to the driver's seat. Noe heard appellant's
comments to his family and saw appellant waving around what he described as a club
hitting the SUV. Noe began to yell to appellant to distract him and to give his family
enough time to drive away. He testified that his wife was able to drive toward the
median and that appellant hit the SUV approximately five times before it drove away. 
Noe testified that he had had no prior contact with appellant and he was unaware of
any contact his wife had had with him. 

 Noe reentered the building and yelled to his shift supervisor, Rodney Aird, that
a man was attacking his wife. Aird called 911 and alerted the police about the
disturbance that was occurring. Noe followed appellant away from the premises until
the police arrived and arrested appellant.

 At trial, Trevino identified appellant as the man he saw that night. Both Noe
and Aird testified that they were afraid for the complainant's and the children's lives,
in addition to their own. All of the witnesses testified that appellant struck the SUV
up to four or five times.

 Officer Flores testified that, after arriving on the scene, he received a
description of the attacker from Aird. Officer Flores found appellant three or four
blocks away with a large wooden club and a bag. Inside the bag, Officer Flores found
a large knife. Officer Flores took appellant back to the scene of the incident, where
the complainant identified him as the attacker. Appellant was then placed under
arrest. At trial, Officer Flores identified appellant as the man he arrested, and he
testified that the wooden club was capable of causing death or serious bodily injury. 

Legal Sufficiency In his first point of error, appellant contends the evidence at trial was legally
insufficient to support his conviction for aggravated assault with a deadly weapon. 
Appellant specifically argues that the State presented legally insufficient evidence
that the weapon appellant used the night of the incident was capable of causing death
or serious bodily injury. 

 In determining whether evidence is legally sufficient to support a conviction
of guilt, the evidence is viewed by the appellate court in the light most favorable to
the prosecution to determine whether a rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Drichas v. State, 175
S.W.3d 795, 798 (Tex. Crim. App. 2005) (citing Cates v. State, 102 S.W.3d 735, 738
(Tex. Crim. App. 2003)); see also Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.
Ct. 2781, 2788-89 (1979). "The verdict may not be overturned unless it is irrational
or unsupported by proof beyond a reasonable doubt." Santacruz v. State, 237 S.W.3d
822, 825 (Tex. App.--Houston [14th Dist.] 2007, pet. ref'd) (citing Matson v. State,
819 S.W.2d 839, 846 (Tex. Crim. App. 1991)).

Aggravated Assault

 A person commits aggravated assault with a deadly weapon if he or she
intentionally or knowingly threatens another with imminent bodily injury and uses or
exhibits a deadly weapon during the act of assault. Tex. Penal Code. Ann.
§ 22.02(a)(2) (Vernon Supp. 2007). The penal code defines a deadly weapon as 

 (A) a firearm or anything manifestly designed, made, or adapted for the
purpose of inflicting death or serious bodily injury; or 


 (B) anything that in the manner of its use or intended use is capable of
causing death or serious bodily injury. 


Id. § 1.07(a)(17)(A)(B) (Vernon Supp. 2007).

 

 An object may be a deadly weapon per se if it is either "a firearm or anything
manifestly designed, made, or adapted for the purpose of inflicting death or serious
bodily injury [.]" Thomas v. State, 821 S.W.2d 616, 619-20 (Tex. Crim. App. 1991). 
The bat or club described by the complainant and the witnesses does not constitute
a deadly weapon per se under subsection 1.07(a)(A)(B). See Parkman v. State, 191
S.W.2d 743, 746 (Tex. Crim. App. 1945); Granger v. State, 722 S.W.2d 175, 176
(Tex. App.--Beaumont 1986, pet. ref'd). Therefore, we must determine if the object
became a deadly weapon by appellant's use or intended use of the object, rendering
it capable of death or serious bodily injury. Tex. Penal Code Ann.
§ 1.07(a)(17)(A); In re S.B., 117 S.W.3d 443, 446 (Tex. App.--Fort Worth 2003, no
pet.) (citing McCain v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000)). Expert
testimony is not required for a jury to find a weapon to be a deadly weapon. English
v. State, 647 S.W.2d 667, 669 (Tex. Crim. App. 1983). 

 The Court of Criminal Appeals has approved several factors that are to be used
in determining whether or not an object constitutes a deadly weapon. In re S.B., 117
S.W.3d at 446. Those factors include (1) the physical proximity between the victim
and the object; (2) the threats or words used by the assailant; (3) the size and shape
of the weapon; (4) the weapon's ability to inflict death or serious bodily injury; and
(5) the manner in which the defendant used the weapon. Id. No one factor is
determinative. Id. at 447. Therefore, the appellate court must examine each case
independently to determine whether, based on the surrounding facts, the object in the
manner in which it was used constituted a deadly weapon. Id. (citing Brown v. State,
716 S.W.2d 939, 947 (Tex. Crim. App. 1986)). A jury is allowed to consider the
victim's fear when assessing all of the facts. See Warren v. State, 764 S.W.2d 906,
908 (Tex. App.--Corpus Christi 1989, pet. ref'd) (holding that bat was deadly
weapon based on manner in which it was used to strike complainant's car). Previous
cases have held it is not necessary to prove that wounds were inflicted in order to
declare that an object was used as a deadly weapon. See English v. State, 171 S.W.3d
625, 628 (Tex. App.--Houston [14th Dist.] 2005, no pet.) (citing Parrish v. State,
647 S.W.2d 8, 11 (Tex. App.--Houston [14th Dist.] 1982, no pet.)).

 (1) The physical proximity between the victim and the object

 The record reflects that the complainant was outside her SUV at the beginning
of the attack and was forced to rush into the SUV before buckling in her children in
order to avoid appellant's blows. She was in her SUV during the remainder of the
attack. The record shows that appellant used the object to strike the SUV at least four
to five times during the incident. The testimony shows that appellant stood close
enough for the complainant to see him from within the SUV and to recognize that he
was holding and using a bat or club to hit the SUV. The evidence also showed one
of the blows to the SUV landed on the panel between the front and back side
windows, implying that the bat or club came close enough to hit one of the windows. 


 The complainant testified that she was afraid of appellant during the attack and
believed he had the capability to kill her and the children. The SUV stood as the only
obstacle between the bat or club appellant was using and the complainant and her
children. Noe and Aird also testified that they feared for the children's and the
complainant's lives. 

 (2) The threats or words used by the assailant

 

 The complainant testified that she heard appellant say to her, "come here, you
b****. I'm going to get you." Aird testified that he heard appellant say, "come on
M***** F***. Come on. I got something for you." Finally, Trevino testified while
he was trying to get the attention of appellant away from his family he also heard
appellant say, "Get out of the truck. I'm going to beat you. I'm going to kill you."

 (3) The size and shape of the weapon

 At trial, the jury heard Noe's testimony that he initially thought the object was
a four-by-four board, which is normally used in constructing fences, but that it
appeared to have been altered to look like a bat. Aird testified that the object looked
like a "large stick" that he believed was "thicker than a bat." While the complainant
testified that she did not clearly see what appellant was using during the attack, she
believed it to be an object that resembled a bat. When asked whether or not the object
admitted into evidence resembled the object appellant had used during the attack, the
complainant stated that it did. That object was a wooden club. Officer Flores
testified that he had found appellant three or four blocks from the crime scene with
a large wooden club and returned with him to the crime scene, where the complainant
identified him as the attacker.

 (4) The weapon's ability to inflict death or serious bodily injury

 At trial, Officer Flores testified that it was his belief the weapon confiscated
from appellant was capable of causing serious injury and death. The complainant
testified that she was afraid for her life and for her children's lives. It was also Noe's
belief that his wife and children could have been killed had the weapon come in
contact with them directly. Noe also testified at trial that he chose not to get too close
to appellant, even though his family was being attacked, because of fear that he could
possibly be killed.

 (5) The manner in which the defendant used the weapon

 The witnesses testified that appellant used the object he was holding anywhere
from four to five times to strike the complainant's SUV until she was finally able to
drive around appellant and leave the parking lot. The trial court admitted pictures of
the complainant's SUV, which established that appellant used the object with enough
force to damage the vehicle. Aird testified that the blows to the SUV were so loud
that they sounded as if a car bomb had gone off. Noe testified that he witnessed
appellant using the weapon to hit the driver's side hood with all his might, which he
interpreted as a sign that appellant was really trying to do some damage. Finally, the
complainant testified that appellant made contact with her SUV on his very first
swing and continued to make contact with each swing, also indicating that he
intended to use the weapon to cause damage. 

 When considering the totality of the facts and testimony, we conclude that a
rational jury could find beyond a reasonable doubt that the weapon in the manner of
its use or intended use was capable of causing death or serious bodily injury. See
Tex. Penal Code Ann. § 1.07(a)(17)(A)(B). 

 We overrule appellant's first point of error. 

Factual Sufficiency


 In his second point of error, appellant contends the evidence was factually
insufficient to support his conviction. Specifically, appellant contends the State did
not establish that he was the person who committed the acts complained of on the
night of the incident. 

 In a factual sufficiency analysis, the evidence is viewed in a neutral light. 
Drichas, 175 S.W.3d at 799. There are two established ways that an appellate court
may find the evidence to be factually insufficient: 1) the evidence supporting the
finding, when considered alone, is too weak to support the jury's finding beyond a
reasonable doubt or 2) the contravening evidence is so strong that the State could not
have met its burden of proof at trial. Id. (citing Zuniga v. State, 144 S.W.3d 477,
484-85 (Tex. Crim. App. 2004)). 

Identity of Attacker

 At trial, Noe testified that he stood a distance of 12 feet from appellant on the
night of the incident. Noe also testified that he followed appellant from a distance of
10 feet to ensure that appellant would not leave his sight until the police arrived.
Appellant contends on appeal that Noe did not describe appellant on the night of the
incident. We disagree.

 The record reflects that when the police arrived Noe pointed out appellant,
whom he had been following right before appellant was arrested. Aird also gave
appellant's description to the arresting officer prior to appellant's arrest. (1) In addition,
on the night of the incident, after appellant was arrested, Officer Flores returned
appellant to the scene, where the complainant identified him as the attacker. 
Appellant did not introduce any evidence at trial to controvert that he was the person
identified as the attacker on the night of the incident. Accordingly, we conclude that
the evidence showing appellant's identity as the attacker was not so weak or so
against the great weight and preponderance of the evidence that the jury could not
have concluded beyond a reasonable doubt that he was the attacker. 

 We overrule appellant's second point of error. 

Conclusion

 We affirm the judgment of the trial court. 


 Evelyn V. Keyes

 Justice


Panel consists of Justices Taft, Keyes, and Alcala.

Do not publish. Tex. R. App. P. 47.2(b). 
1. On appeal, appellant argues the witnesses and the complainant knew appellant prior
to the incident. However, the only witness who testified that he knew appellant and
had contacted the police regarding appellant was offered at the punishment phase, not
the guilt-innocence stage.